**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4389-15T1

IN THE MATTER OF
THE LICENSE OF CHERYL
ACKERMAN, M.D.,
License No. 25MA06096100

TO PRACTICE MEDICINE AND
SURGERY IN THE STATE OF
NEW JERSEY

_____

Argued February 14, 2017 — Decided July 24, 2017

Before Judges Espinosa and Suter.

On appeal from the New Jersey State Board of
Medical Examiners.

Michael Confusione argued the cause for
appellant Cheryl Ackerman, M.D. (Hegge &
Confusione, LLC, attorneys; Mr. Confusione, of
counsel and on the brief).

Pavithra Angara, Deputy Attorney General,
argued the cause for respondent New Jersey
State Board of Medical Examiners (Christopher
S. Porrino, Attorney General, attorney; Andrea
Silkowitz, Assistant Attorney General, of
counsel; Ms. Angara, on the brief).

PER CURIAM

Cheryl Ackerman, M.D., appeals from the denial by the State Board of Medical Examiners (Board) of her petition to amend a consent order. We affirm.

Dr. Ackerman is a board-certified dermatologist and internist, who was licensed to practice medicine in New Jersey in 1994. In January 2011, she was referred to the Board's Professional Assistance Program (PAP), following a number of patient complaints. In October 2011, while represented by counsel, Dr. Ackerman entered into a Private Letter Agreement (PLA) with the Board in which she agreed to participate in the PAP.

Dr. Ackerman began therapy sessions with a psychologist pursuant to PAP's directives. However, the Board temporarily suspended her license in February 2012 after receiving a letter from PAP's Executive Medical Director expressing his concern about her fitness to remain in practice and advising that she had failed to provide required psychiatric reports. After the Board refused Dr. Ackerman's petitions for reinstatement, she filed an appeal. We remanded the matter for a hearing before the Office of Administrative Law (OAL).

The Administrative Law Judge (ALJ) ordered Dr. Ackerman to "undergo updated evaluations and diagnostic testing" with Dr. Mijail Serruya, a board-certified neurologist. Dr. Serruya found that Dr. Ackerman did not display signs of "frontotemporal dementia

or any other active neurodegenerative process." Although certain aspects of Dr. Ackerman's behavior "could be concerning for frontal lobe dysfunction," he opined that these aspects were mild. Dr. Serruya later modified his report following his review of additional materials. He concluded that a differential diagnosis of certain symptoms included "an agrammatic primary progressive aphasia" that could "be related to frontotemporal dementia processes." Dr. Serruya's recommendations included an updated magnetic resonance imaging (MRI) of Dr. Ackerman's brain, a fluoro-deoxyglucose positron emission tomography (FDG-PET) scan and follow-up neuropsychology.

Dr. Ackerman, represented by counsel, entered into a consent order in the OAL that reinstated Dr. Ackerman's license, subject to certain conditions, which included the following:

> [Dr. Ackerman] shall resume the practice of medicine only in the employ of another physician approved by the Board and shall not engage in solo practice absent approval from the Board. [Dr. Ackerman] shall report to the Board the name and address of the physician with whom she is employed. This physician shall evaluate [Dr. Ackerman's] skills to practice medicine and report any concerns regarding [Dr. Ackerman's] practice to the Board's Medical Director . . . . [Dr. Ackerman] is permitted to seek Board approval to practice in a solo setting after she has practiced in an employment setting for two (2) years.

Within ninety (90) days of the entry of this consent order, [Dr. Ackerman] shall obtain an FDG-PET scan of her brain. Within ten (10) days of the scan, a report shall be provided to [the] Medical Director of the Board, Dr. Serruya and a neurologist of [Dr. Ackerman's] choosing who shall be identified to the Board. . . . If the results of the FDG-PET scan show marked problems, [Dr. Ackerman] shall be required to have yearly follow-up treatment related to such problems, at her own expense, with a neurologist of her choosing.

[Dr. Ackerman's] failure to obtain the FDG-PET scan and provide copies of the results within the time period specified above shall result in the entry of an Order of automatic suspension of [Dr. Ackerman's] license without notice. [Dr. Ackerman] shall have the right to apply for removal of the automatic suspension on five (5) days notice but in such event shall be limited to a showing that information of her failure to obtain the FDG-PET scan and/or provide copies of the results in a timely manner was false.

Within the next twelve (12) months, and at yearly intervals thereafter, [Dr. Ackerman] shall arrange for follow-up neurological examinations with a neurologist of her choosing. Within thirty (30) days of each such examination, [Dr. Ackerman's] neurologist shall provide a full report to the Board's Medical Director . . . . Prior to [Dr. Ackerman's] first examination with her neurologist, [Dr. Ackerman] shall undergo an MRI (with and without contrast) of her brain. The results of this scan shall be provided to [Dr. Ackerman's] neurologist for his/her evaluation.

[Dr. Ackerman] shall continue to attend treatment with Ben J. Susswein, Ph.D. Dr. Susswein shall provide quarterly reports to the Board's Medical Director . . . regarding

A-4389-15T1

[Dr. Ackerman's] ongoing fitness to practice medicine.

In March 2016, with new counsel, Dr. Ackerman filed an emergent motion with the Board to amend the consent order, seeking the removal of all restrictions on her medical license and all prior public Board orders posted on the Board's website, and the issuance of a declaration that she had complied with all psychological reporting obligations imposed by the Board and a guarantee that no further conditions would be placed on her license and no further psychological testing would be required. She further asked that if a hearing should become necessary, it be held in the OAL. The Attorney General opposed the motion.

In April 2016, the Board denied Dr. Ackerman's petition to amend the consent order. In the order denying her petition, the Board rejected Dr. Ackerman's contention that the ALJ had directed the entry of a consent order that reinstated her license without any restrictions. The Board found the conditions imposed were reasonable and that the consent order was valid and entered into with the advice of counsel.

The Board's findings also included a review of Dr. Ackerman's submissions to the Board, stating her "writings indicate extremely problematic thought processes," and a "continued inability to follow the Board's prior direction." The Board stated,

"[c]ollectively, these issues cause the Board great concern about the status of [Dr. Ackerman's] mental health, her ability to control her impulses and her own insight into her condition and abilities."

The Board also noted that Dr. Ackerman failed to refer to Dr. Serruya's addendum to his final report, in which he substantially modified his initial opinion and expressed deep reservations about her ability to practice medicine. His concern that certain symptoms could be related to frontotemporal dementia was consistent with prior diagnoses by other physicians.

The Board reaffirmed its finding that "it is not in the interest of public safety to permit [Dr. Ackerman] to practice absent, at the very least, the protections embodied in the [c]onsent [o]rder to which she agreed."

In March and April 2016, Dr. Ackerman's counsel engaged in communications with the Attorney General's office, contending she was unable to secure malpractice insurance. However, only one rejection letter was submitted as proof. The Deputy Attorney General referred her attorney to N.J.S.A. 45:9-19.17 and N.J.A.C. 13:35-6.18 for the definition of when malpractice insurance is "not available" and provided additional direction regarding the proof necessary to make that showing. The Board represents that Dr. Ackerman has not made the requisite showing to date.

A-4389-15T1

In her appeal, Dr. Ackerman argues the Board erred in denying her request to amend the consent order. She contends she cannot obtain malpractice insurance or secure employment if her license is listed as "restricted." She argues the Board can suspend or revoke her license only upon proof of one of the statutory grounds set forth in N.J.S.A. 45:1-21, and there is not substantial, credible evidence in the record to support the Board's claim that its action is warranted by subsection (i), which permits suspension or revocation when the physician "[i]s incapable, for medical or any other good cause, of discharging the functions of a licensee in a manner consistent with the public's health, safety and welfare." She also argues the Board's action constitutes discrimination against her in violation of the Rehabilitation Act, 29 U.S.C.A. § 794(a). We have considered these arguments in light of the record and applicable law and conclude they lack merit.

Our review of the Board's decision is limited. Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 9 (2009). We must sustain the agency's action in the absence of "a 'clear showing' that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Ibid. Additionally, we give "great deference" when an agency interprets a statute "within its scope of authority." In re N.J.A.C. 7:1B-1.1 Et Seq., 431 N.J. Super. 100, 114-15 (App. Div.) (quoting N.J. Ass'n of

Sch. Adm'rs v. Schundler, 211 N.J. 535, 549 (2012)), certif. denied, 216 N.J. 8, and 216 N.J. 363 (2013). "If there is any fair argument in support of the course taken by the agency or any reasonable ground for difference of opinion among intelligent and conscientious officials, the decision" should not be disturbed. Lisowski v. Borough of Avalon, 442 N.J. Super. 304, 330 (App. Div. 2015) (quoting City of Newark v. Nat. Res. Council in Dep't of Envtl. Prot., 82 N.J. 530, 539, cert. denied, 449 U.S. 983, 101 S. Ct. 400, 66 L. Ed. 2d 245 (1980), certif. denied, 227 N.J. 374, and certif. denied, and appeal dismissed, 227 N.J. 380 (2016)).

In this case, the agency action directly implicates the Board's expertise in the field of medicine. See In re License Issued to Zahl, 186 N.J. 341, 353 (2006). The Board's order articulated findings that fell within its superior knowledge regarding the standard to be applied in determining the fitness of a physician to practice. The findings were also supported by specific references to the record before it. In short, there is no clear showing that the Board's decision was arbitrary, capricious or unreasonable.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4389-15T1