970 A.2d 347

CIRCUS LIQUORS, INC., PETITIONER–APPELLANT, v.
GOVERNING BODY OF MIDDLETOWN TOWNSHIP,
RESPONDENT–RESPONDENT.

Argued January 21, 2009—Decided May 6, 2009.

*Lorinda Lasus,* Deputy Attorney General, argued the cause for appellant Division of Alcoholic Beverage Control (*Anne Milgram,* Attorney General of New Jersey, attorney).

*Larry S. Loigman,* argued the cause for appellant Circus Liquors, Inc.

*Bernard M. Reilly,* argued the cause for respondent.

Justice LaVECCHIA delivered the opinion of the Court.

*N.J.S.A.* 33:1–12.31 prohibits persons from holding a beneficial interest in more than two retail alcoholic beverage licenses in New

Jersey. The question before us is whether the Director of the Division of Alcoholic Beverage Control (Director) exceeded his authority by applying the remedy of divestiture—that is, allowing sale of the license to an unrelated bona fide purchaser—when enforcing compliance with the two-license limitation in this matter. Because we conclude that divestiture is within the Director's authority, and that it was not arbitrary, capricious, or unreasonable for the Director to have resorted to divestiture as the means of unraveling the licensing violation that occurred here, we reverse the judgment of the Appellate Division.

## I.

This matter was presented as a contested case before the Director, who referred the matter to the Office of Administrative Law. We recite the procedural history and facts as they were established in the contested case proceeding conducted by the Administrative Law Judge (ALJ) to whom the matter was referred.

Prior to 1998, Circus Liquors, Inc. owned two liquor licenses, Nos. 1331–32–005–003 and 1331–44–033–006, in Middletown Township. In December 1998, Middletown granted ownership of license No. 1331–44–028–003 to Food Circus Supermarkets of Middletown, Inc. (Food Circus). Circus Liquors and Food Circus were owned by the same group of shareholders (collectively "Circus"). Circus does not dispute that it owned all three licenses at all times relevant to this appeal.[1] Moreover, Middletown routinely renewed Circus's ownership of all three licenses each year through 2004, approving applications that clearly revealed the ownership interest in all three.

In June 2005, after reviewing Circus's renewal applications, Middletown discovered that it could not "validly renew all three liquor licenses owned by [Circus]" because *N.J.S.A.* 33:1–12.31

---

[1] License No. 1331–44–033–006 became inactive in May 2003.

prohibits persons from holding a simultaneous beneficial interest in more than two retail alcoholic beverage licenses in New Jersey. Accordingly, Middletown passed a resolution denying renewal for license No. 1331–44–033–006 because it had been inactive for over two years and would therefore require a "Special Ruling from the State ABC [Director of the Division of Alcoholic Beverage Control]" for its renewal. Middletown renewed the two active licenses in a separate resolution.

In response to the license non-renewal, Circus filed two petitions with the State Division of Alcoholic Beverage Control (Division). The first petition challenged the non-renewal of the license, while the second sought a "Special Ruling" that would reactivate the license for the limited purpose of permitting Circus to "transfer the license so that the 'two-license' limitation will become moot." The two matters were consolidated and transferred to the Office of Administrative Law.

In April 2006, the ALJ issued an Initial Decision granting summary decision to Middletown and dismissing Circus's petitions. The ALJ affirmed Middletown's non-renewal of the license, finding that Circus's ownership of three licenses clearly violated *N.J.S.A.* 33:1–12.31. Noting that "[t]he use of estoppel to require that a governmental agency perpetuate an illegal condition or to prevent it from enforcing the law ... is disfavored," the ALJ also refused to allow the license to be reactivated for the limited purpose of permitting Circus to transfer ownership in the license.

In November 2006, the Director adopted the ALJ's Initial Decision that affirmed, with modification, Middletown's denial of renewal of the inactive license. The Director agreed that Circus's ownership of three licenses was "facially inconsistent with *N.J.S.A.* 33:1–12.31," that Circus Liquors did not "have a valid claim of detrimental reliance since it could have no expectation of renewal of a license which would constitute a continuing violation of *N.J.S.A.* 33:1–12.31," and that the licenses did not fit into any exception to the two-license limit created by *N.J.S.A.* 33:1–12.31. At the same time, however, the Director modified the remedy

recommended by the ALJ to allow Circus the opportunity to divest itself of all interest in the license. Staying the non-renewal until June 30, 2007, the Director "indefinitely suspended" Circus's use of the license, and allowed Circus the remainder of the license term to sell its interest in the license to an unrelated bona fide third party. The Director explained that he found the stay to be appropriate and necessary "to facilitate an orderly transition for both the municipality and the licensee while still ensuring compliance with [*N.J.S.A.* 33:1–12.31]."

Middletown appealed the Director's remedy that, in effect, delayed Middletown's non-renewal of Circus's third license. It argued that the Director's stay impermissibly perpetuated a continued violation of *N.J.S.A.* 33:1–12.31. The Appellate Division agreed and reversed the Director's decision to stay the non-renewal in order to permit Circus to divest itself of the license. *Circus Liquors, Inc. v. Governing Body of Middletown,* 398 *N.J.Super.* 220, 222, 225–26, 941 *A.*2d 616 (2008). While noting that it need not decide whether the Director might, under certain circumstances, authorize a brief period of technical noncompliance with the two-license limitation, *id.* at 226, 941 *A.*2d 616, the Appellate Division rejected the invocation of such authority in Circus's favor because of the license-holders' "stark and lengthy violation of *N.J.S.A.* 33:1–12.31," *id.* at 227, 941 *A.*2d 616. The panel concluded that Circus's "seven-year ownership of a third license is not a mere technical violation of [*N.J.S.A.* 33:1–12.31], but rather, a long-term, persistent violation of one of the chief evils the Legislature intended to prohibit." *Id.* at 226, 941 *A.*2d 616. Accordingly, the Appellate Division reversed the Director's remedy because "the Director mistakenly created a circumstance by which the license holders could continue to profit from their unlawful conduct." *Ibid.*

We granted, separately, the petitions for certification filed by Circus Liquors, 196 *N.J.* 343, 953 *A.*2d 762 (2008), and the Attorney General of the State of New Jersey on behalf of the

Director, 197 *N.J.* 15, 960 *A.*2d 744 (2008), seeking review of the Appellate Division judgment.

## II.

In this appeal, Circus argues that the Appellate Division erred in reversing the Director's preferred remedy of allowing an orderly divestiture rather than an immediate revocation of the license, given the circumstances of this violation of *N.J.S.A.* 33:1–12.31. It argues that the violation demonstrated error on both the part of Middletown and Circus, and that divestiture would allow for an orderly transition of the license. The Attorney General, on behalf of the Division, asserts that the Director's stay of non-renewal was wholly consistent with his legislatively delegated discretion to apply the remedy of divestiture when enforcing compliance with *N.J.S.A.* 33:1–12.31 and that its use was not arbitrary, capricious, or unreasonable in this instance.

Middletown, on the other hand, argues in support of the Appellate Division's analysis, which it contends is consistent with the licensing scheme. Pursuant to that licensing system, Middletown argues further that the Director had no discretion to overrule, or to delay through a stay, Middletown's determination that it was required, by *N.J.S.A.* 33:1–12.31, to deny Circus's license renewal.

## III.

Fundamentally, this appeal is about the role of appellate courts when reviewing an administrative agency's decision. The limited nature of such review is well known. Appellate review of an agency's determination is limited in scope. *See In re Herrmann,* 192 *N.J.* 19, 27, 926 *A.*2d 350 (2007); *In re Carter,* 191 *N.J.* 474, 482, 924 *A.*2d 525 (2007). Without a "clear showing" that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record, an administrative agency's final quasi-judicial decision should be sustained, regardless of whether a reviewing court would have reached a different conclusion in the first instance.

*See In re Herrmann, supra,* 192 *N.J.* at 27–28, 926 *A.*2d 350.
Three key determinations govern our review:

(1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

[*Mazza v. Bd. of Trs.,* 143 *N.J.* 22, 25, 667 *A.*2d 1052 (1995) (citing *Campbell v. Dep't of Civil Serv.,* 39 *N.J.* 556, 562, 189 *A.*2d 712 (1963)).]

In assessing those criteria, a court must be mindful of, and deferential to, the agency's "expertise and superior knowledge of a particular field." *Greenwood v. State Police Training Ctr.,* 127 *N.J.* 500, 513, 606 *A.*2d 336 (1992). Even if a court may have reached a different result had it been the initial decision maker, it may not simply "substitute its own judgment for the agency's." *In re Carter, supra,* 191 *N.J.* at 483, 924 *A.*2d 525 (quoting *Greenwood, supra,* 127 *N.J.* at 513, 606 *A.*2d 336).

When evaluating an action of the Director of Alcoholic Beverage Control, substantial deference is owed to the Director. In enforcing the State's alcohol regulations, the "Director has powers of supervision and control which set him apart from any other formal appellate tribunal." *Blanck v. Mayor of Magnolia,* 38 *N.J.* 484, 491, 185 *A.*2d 862 (1962). Because of the "*sui generis* nature and significance" of the State's liquor regulations, "it is a subject by itself, to the treatment of which all the analogies of the law, appropriate to other administrative agencies, cannot be indiscriminately applied." *Id.* at 490, 185 *A.*2d 862.

Originally enacted in 1933, the New Jersey Alcoholic Beverage Control Act, set forth in Title 33, *N.J.S.A.* 33:1–1 to –97 (the Act or Title 33), "vests the Director or other license-issuing authority with extensive regulatory and investigative power over the liquor industry." *In re C. Schmidt & Sons, Inc.,* 79 *N.J.* 344, 353, 399 *A.*2d 637 (1979). A municipality has "the original power to pass on an application for a . . . license or the transfer thereof," but that power is "broadly subject to appeal to the Director."

*Blanck, supra,* 38 *N.J.* at 492, 185 *A.*2d 862 (quoting *Borough of Fanwood v. Rocco,* 33 *N.J.* 404, 414, 165 *A.*2d 183 (1960)). When such an appeal is taken, the Director's review is *de novo* as to all necessary factual and legal determinations. *Ibid.* That procedural structure "save[s] to the local body the first determination of the grant of the license," while upholding "the legislative aim that the Director exercise a broad supervisory power in this delicate area." *Id.* at 494–95, 185 *A.*2d 862.

Over the years, provisions have been added to Title 33 "designed to aid in the stabilization of the industry and in the promotion of temperance." *Grand Union Co. v. Sills,* 43 *N.J.* 390, 400, 204 *A.*2d 853 (1964). The particular provision at issue in this matter, *N.J.S.A.* 33:1–12.31, provides that "no person … shall, except as hereinafter provided, acquire a beneficial interest in more than a total of two alcoholic beverage retail licenses." That requirement was intended "to curb relationships and practices calculated to stimulate sales and impair the State's policy favoring trade stability and the promotion of temperance." *Id.* at 404, 204 *A.*2d 853. While the constitutionality of that provision is beyond dispute, we are called upon here to determine the scope of the Director's authority when remedying a violation of the two-license limitation.

When the two-license limitation initially was enacted in 1962, the Legislature did not specify the precise means by which a violation of the provision must be remedied. *N.J.S.A.* 33:1–12.31. Two years later, that issue reached this Court and we concluded "that the clause contemplated revocation of the illegally issued license as well as imposition of a fine." *Grand Union, supra,* 43 *N.J.* at 409, 204 *A.*2d 853. After our decision in *Grand Union,* the Legislature amended Title 33 to provide for fines, *N.J.S.A.* 33:1–12.37, and also to authorize, explicitly, the revocation or suspension of any license in response to a violation of the Act. *See N.J.S.A.* 33:1–31(a) ("Any license, whether issued by the director or any other issuing authority, may be suspended or revoked by the director, or the other issuing authority may suspend or revoke any license issued

by it."). We turn then to the Director's determination of the appropriate remedy for the violation presented in this matter.

### IV.

 Review of the Act leads unmistakably to the conclusion that an individual in possession of more than two licenses is subject to fines and the revocation or suspension of his or her license. *See N.J.S.A.* 33:1–12.37. That said, the Act does not reveal a mandate for the immediate revocation of an offending license the moment that a violation of *N.J.S.A.* 33:1–31 is unearthed.

The Director correctly found Circus's ownership of three licenses to be "facially inconsistent with *N.J.S.A.* 33:1–12.31." However, he chose to effectuate the Act's two-license limit in this instance, not through immediate revocation, but rather through the more controlled remedy of divestiture, which he believed would "facilitate an orderly transition for both the municipality and the licensee while still ensuring compliance with [*N.J.S.A.* 33:1–12.31]." No doubt, the Director considered the circumstances of Middletown's multiple-year issuances of these licenses to be unusual, given that all parties to these transactions were acting openly throughout.

 Generally, administrative agency heads, such as the Director, may exercise powers that are expressly granted by statute and those fairly implied as necessary to carry out their assigned function. *See Dep't of Labor v. Pepsi–Cola Co.,* 170 *N.J.* 59, 61, 784 *A.*2d 64 (2001); *see also Cammarata v. Essex County Park Comm'n,* 26 *N.J.* 404, 411, 140 *A.*2d 397 (1958) ("The grant of an express power is always attended by the incidental authority fairly and reasonably necessary or appropriate to make it effective. . . . Authority delegated to an administrative agency should be construed so as to permit the fullest accomplishment of the legislative intent." (citations omitted)). In this specific setting, the Legislature has clearly granted the Director special powers of administration and control over the entire liquor industry. *See In*

*re C. Schmidt, supra,* 79 *N.J.* at 353, 399 *A.*2d 637 (citing Director's "extensive regulatory and investigative power over the liquor industry"); *Blanck, supra,* 38 *N.J.* at 495, 185 *A.*2d 862 (recognizing Director's broad discretion, on *de novo* review, to assess motivations of municipal licensing authorities, as well as merits of licensure applications, and to mold relief accordingly). We are convinced that the Legislature meant for the Director to have ample implied authority to deal fairly with parties when executing his extensive authority over alcoholic beverage licenses. Thus, we find that with the Director's express authority to revoke, or to suspend, licenses comes the implied power to control the divestiture of interest in an improperly issued license, as occurred here.

Plainly, the Director believed that divestiture was an available arrow in his quiver, a part of his implied powers not inconsistent with any express provision in the Act. It is not for us to determine how best to facilitate orderly transitions within the realm of liquor licensing. That said, we find that the Director acted within his authorized powers when he "indefinitely suspended" Circus's license in order to permit it to divest itself of any interest in the offending license by selling it to an unrelated bona fide third party. Well-recognized general principles of deference to an agency's quasi-judicial determination, coupled with the heightened deference given to the Director's exercise of his discretionary authority in the "delicate area" of alcohol regulation, militate against interference with the Director's effectuation of his chosen remedy in this matter, so long as that remedy "follow[s] the law." *Mazza, supra,* 143 *N.J.* at 25, 667 *A.*2d 1052 (1995) (citing *Campbell, supra,* 39 *N.J.* 556, 562, 189 *A.*2d 712 (1963)).

In sum, we hold that the remedy of license divestiture is not inconsistent with the Act and that the Director's determination to apply it in this matter was not an arbitrary, capricious, or unreasonable exercise of that discretion. Because it is not our role to second-guess the Director's reasonable method of enforcing the Act's two-license limit, his chosen remedy is entitled to stand.

## V.

We reverse the Appellate Division's judgment and remand this matter to the Director. We affirm the validity of the Director's order that stayed the indefinite suspension of Circus's license to permit divestiture of any interest by Circus in the license through a sale to an unrelated bona fide purchaser. On remand, the Director shall establish a revised schedule for the prompt disposition of the suspended license.

*For reversal and remandment*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA–SOTO and HOENS—7.

*Opposed*—None.