# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0500-17T3

DEPARTMENT OF CHILDREN
AND FAMILIES,

     Petitioner-Respondent,

v.

B.S.,

     Respondent-Appellant,

and

P.H.,

     Respondent.

_____

        Submitted September 25, 2018 – Decided October 15, 2018

        Before Judges Rothstadt and Natali.

        On appeal from the New Jersey Department of Children and Families, Division of Child Protection and Permanency, Case ID No. 16-0604.

        B.S., appellant pro se (Anthony J. Van Zwaren, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Christina A. Duclos, Deputy Attorney General, on the brief).

PER CURIAM

B.S. appeals from a final agency decision of the Division of Child Protection and Permanency (Division), Department of Children and Families (DCF), denying his and respondent P.H.'s application to become resource family parents.[1]  We affirm.

B.S. was a family friend of M.B, the biological mother of three children, ages twelve, ten and nine, who were in the Division's legal custody but who resided with B.S. in his Newark home.  The children were deemed presumptively eligible to reside in the home conditioned upon B.S. obtaining a resource family parent license.

As part of the application process, the Division inspected the home and discovered numerous violations, including plumbing issues and a lack of smoke and carbon monoxide detectors.  The Division also discovered that P.H. resided in the home and was therefore required to apply for a resource family parent license and participate in mandatory training for resource parents, which she

---

[1] P.H. has not appealed from the Division's order.

initially refused to do. Additionally, Josianne Vincent, a Division caseworker, observed the children selling water unsupervised on a busy street in Newark. As a result of these concerns, the Division removed the children from the home.

Following the removal, the Division continued to evaluate the home and assist B.S. and P.H. with their application. During the investigation, B.S. admitted to a Division caseworker that he hit one of the children. In addition, M.B. informed the Division that B.S. made persistent and unwanted contact with her.

B.S. and P.H were given psychological evaluations to assess their mental status, parenting ability, and treatment needs. Dr. Mark Singer, Ed.D., issued a report concluding that while reunification with the children was a viable goal, both B.S. and P.H. had significant cognitive and parenting limitations and any reunification would have to include services for the family.

In light of these issues, the Division recommended denying B.S.'s and P.H.'s application. DCF's Office of Licensing (OOL) agreed and determined B.S. and P.H. failed to meet required licensing standards. B.S. and P.H. requested a hearing and the matter was transferred to the Office of Administrative Law for a hearing before an Administrative Law Judge (ALJ).

ALJ Elissa Mizzone Testa presided over a contested hearing and considered testimony from five witnesses and documentary evidence jointly introduced by the parties, which included Division contact sheets, a resource home inspection report, a psychological report from Dr. Singer, and a letter from M.B.

At the hearing, Vincent testified to the home inspection violations and B.S.'s actions in permitting the children to engage in activities that endangered their welfare. She also stated that B.S. failed to disclose in his initial application that P.H. was living in the home. Vincent considered this omission significant because B.S. also told her that P.H. did not want to be a foster parent and initially refused to participate in mandatory foster parent training. Vincent also described the incident where she witnessed the children selling water without any adult supervision and testified that B.S. admitted to hitting one of the children.

Ursula Pollard, a Division quality inspector, stated that B.S. harassed M.B. by repeatedly contacting her in an attempt to have the children returned to his care. Division resource supervisor Tyronnette Amosu testified that B.S. failed to bring the children for scheduled therapeutic services and visits with M.B. According to Amosu, B.S. improperly continued to contact the children

A-0500-17T3

after they were removed from the home. Amosu also testified to the significant issues raised by Dr. Singer's psychological evaluations in which he stated that before reunification could occur, B.S. would need to receive services including family therapy to allow him "to better understand the needs of the children and ways of responding appropriately to the challenge presented by the children."

B.S. testified and denied that he ever hit the children. As to the allegation that the children sold water unsupervised, B.S. maintained that a Division caseworker previously permitted the children to sell water on the street and they were always supervised by him, his sister, or his nephew. B.S.'s nephew confirmed his testimony and stated he would occasionally supervise the children while they sold water. B.S. also denied that he failed to comply with the children's scheduled visits with their biological mother and therapeutic service providers.

The ALJ characterized B.S.'s testimony as "contradictory" and "self-serving with no evidence to support his contentions." She similarly found that his nephew's testimony lacked credibility stating that he was "unable to observe, remember, or recount dates, times or locations [when] the children [sold] water" and noting he gave "inconsistent statements" and was "partial" to B.S.

A-0500-17T3

After considering the credible evidence, ALJ Mizzone Testa found that: 1) the "children sold water unsupervised on a crowded Newark street;" 2) B.S. "made persistent, unwanted contact with the biological mother of the children and failed to comply with her scheduled visits and with the [recommended] services for the children;" and 3) B.S. "hit at least one of the children for whom he was seeking to be a resource family parent."

Based on these findings, the ALJ affirmed the OOL's denial of B.S.'s and P.H.'s request for a resource family license and concluded that they failed to prove by a preponderance of the evidence that they satisfied the Level I supervision requirements detailed in N.J.A.C. 3A:51-5.1(a) and N.J.A.C. 3A:51-7.1(a)(1). The Division adopted the ALJ's findings of fact and conclusions of law.

On appeal, B.S. contends that the Division erred in denying his application because the ALJ failed to consider and properly assess the evidence and incorrectly shifted the burden of proof. We disagree and affirm substantially for the reasons detailed in ALJ Mizzone Testa's comprehensive written opinion.

Appellate review of an administrative agency decision is limited. In re Herrmann, 192 N.J. 19, 27 (2007). We generally defer to final agency actions, only "reversing those actions if they are 'arbitrary, capricious or unreasonable

or [if the action] is not supported by substantial credible evidence in the record as a whole.'" N.J. Soc'y for the Prevention of Cruelty to Animals v. N.J. Dep't of Agric., 196 N.J. 366, 384-85 (2008) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)) (alteration in original). Under the arbitrary, capricious, and unreasonable standard, our scope of review is guided by three major inquiries: (1) whether the agency's decision conforms with the relevant law; (2) whether the decision is supported by substantial credible evidence in the record; and (3) whether in applying the law to the facts, the administrative agency clearly erred in reaching its conclusion. In re Stallworth, 208 N.J. 182, 194 (2011).

When an agency decision satisfies such criteria, we accord substantial deference to the agency's fact-finding and legal conclusions, acknowledging the agency's "expertise and superior knowledge of a particular field." Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 10 (2009) (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)). We will not substitute our judgment for the agency's even though we might have reached a different conclusion. Stallworth, 208 N.J. at 194; see also In re Taylor, 158 N.J. 644, 656 (1999).

A-0500-17T3

The OOL is responsible for licensing resource family homes that serve children in the custody or supervision of the Division. N.J.A.C. 3A:51-1.1(a). The OOL is authorized to deny a resource parent application for good cause, which includes "conduct, engaged in or permitted, which adversely affects or presents a serious hazard to the education, health, safety, general well-being or physical, emotional and social development of a child" or if the applicant is not "in full compliance with one or more [L]evel I requirements." N.J.A.C. 3A:51-2.5(b)(8) to (9); N.J.A.C. 3A:51-1.5(a)(1).

The Level I requirements detailed in N.J.A.C. 3A:51-5.1(a) require a resource parent to be of "good character" and to possess the "skills, attributes and characteristics conducive to . . . caring effectively for a child in placement." Further, the resource parent must "[be] in sufficient physical, mental, and emotional health to perform his . . . duties satisfactorily," "cooperate with all activities in the case plan for the child in placement, such as counseling, therapy, court sessions, visits with the child's family", and "be able to provide daily care and supervision for each child . . . as appropriate to the child's age and needs." Finally, N.J.A.C. 3A:51-7.1(a)(1) requires a resource parent to "ensure that the medical, dental, mental/behavioral health, and other health care needs of each child in placement are adequately and promptly met . . . ."

8

After thoroughly reviewing the record in light of the applicable legal principles and the standard of review, we are satisfied that the Division's decision was not arbitrary, capricious or unreasonable and was supported by substantial credible evidence in the record. According deference to the ALJ's credibility determinations, there is substantial evidence in the record to support the ALJ's factual findings. Those findings support the denial of B.S.'s resource family license because he failed to meet the Level I requirements detailed in N.J.A.C. 3A:51-5.1(a) and N.J.A.C. 3A:51-7.1(a)(1).

Finally, to the extent we have not addressed any arguments raised by B.S., we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0500-17T3