**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0868-17T1

PATRICK HUBERT,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES, PUBLIC
EMPLOYEES' RETIREMENT
SYSTEM,

     Respondent-Respondent.

_____

Submitted October 15, 2018 – Decided  November 5, 2018

Before Judges Haas and Sumners.

On appeal from the Board of Trustees of the Public Employees' Retirement System, Department of Treasury, PERS No. 2-1016523.

Ridgway & Stayton, LLC, attorneys for appellant (Herbert J. Stayton, Jr., on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel and on the brief; Christina Cella, Deputy Attorney General, on the brief).

PER CURIAM

Petitioner Patrick Hubert, a former Juvenile Detention Officer, appeals from a final agency decision by the Board of Trustees Public Employees' Retirement System (the Board) denying him accidental disability benefits under N.J.S.A. 43:15A-43. The Board found that Hubert's permanent and total disability due to Parkinson's disease was not a direct result of his work-related accidents. We affirm because the Board applied the proper legal standards and there is sufficient credible evidence in the record to support its findings.

To secure accidental disability benefits under N.J.S.A. 43:15A-43, an applicant must prove several elements. Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 30 (2011). We need not recite those elements except the one in dispute – whether petitioner is permanently and totally disabled as a direct result of the accidents in question. Accordingly, we provide an overview of Hubert's work-related accidents and his medical history that the Board considered in making its decision.

On November 25, 2013, Hubert suffered a head injury when he hit his head on a wall while attempting to restrain an out-of-control resident at the Camden County Juvenile Detention Center. He was treated at a hospital

A-0868-17T1

emergency room and was diagnosed with a concussion. After being out of work, he later returned to light duty.[1]

On April 18, 2014, in a similar incident at the same facility, Hubert suffered another head injury. This time, however, after being treated and diagnosed with post-concussion syndrome, he did not return to work.

In October 2014, Hubert applied for accidental disability retirement benefits through the Board; claiming he was unable to return to work because of "cognitive, neuropsychiatric[,] . . . psychological[,] and somatic residuals of head injuries" caused from the two work-related accidents on November 25, 2013, and April 18, 2014. About three months later, Hubert's neurologist, Dr. Landen,[2] diagnosed him with Parkinson's. The malady causes him to suffer from tremors, loss of balance, muscle cramps, joint pain, and bad handwriting; he wears a twenty-four hour patch to reduce his symptoms.

The Board denied Hubert's application based on its determination that his Parkinson's was "not a direct result of either . . . incident[]," and "[i]nstead . . . the result of a pre-existing disease that [was] aggravated or accelerated by . . .

---

[1] The record does not indicate how long he was out of work nor how long he was on light duty.

[2] He did not testify, and the record does not indicate his first name.

A-0868-17T1

regular work effort." The Board instead granted Hubert the lesser benefit of ordinary disability retirement. He appealed the Board's decision, and the matter was transferred to the Office of Administrative Law for a fact-finding hearing.

In her initial decision, the Administrative Law Judge (ALJ) found that Hubert's injuries from the two work-related accidents were contributing factors to his Parkinson's, but were not a direct cause of his debilitating illness to entitle him to accidental disability retirement benefits. The ALJ's decision boiled down to her evaluation of the testimony of the parties' respective medical experts.

Hubert's expert, Edward Tobe, D.O., a board certified adult and child psychiatrist, relied upon his three reports based upon his examinations of Hubert in December 2006, December 2014, and January 2016, and his review of the reports of Hubert's treating physicians, Mijail Serruya, M.D., Ph.D., and Nicole Sestito, Ph.D.[3] Hubert's treatment records revealed an extensive history of concussions prior to the work-related accidents: one, as a result of wrestling when he was a teenager; three from car accidents – all with loss of consciousness – in 1988, 1989, and 1990; one at home in 2008; another in 2010; and one after a fall in the shower in March 2013.

---

[3] Neither treating physician testified.

A-0868-17T1

Dr. Serruya authored a report about a month after Hubert's last work-related accident, maintaining that Hubert had a "remarkable stepwise decline," and suffered from non-restful sleep, slight tremors in his right hand, intermittent jerk-like myoclonic movements, sexual dysfunction, and worsening mood. In finding that Hubert had post-concussive syndrome, Dr. Serruya stated, "[t]he overall pattern of slowly worsening cognition and mood raise the concern for a post-traumatic alpha-synucleinopathy[4] or other degenerative proteinopathy[5] . . . ."

Dr. Sestito authored a report about two months following Hubert's last work-related accident, likewise diagnosing him with post-concussive syndrome. She noted that Hubert had a right arm tremor, normal gait, average intellectual functioning, intact executive functions, below expectation visuospatial skills, and borderline-impaired learning and memory. She also wrote that "[w]hile it

---

[4] Synucleinopathy is "[a]ny degenerative disease of the central nervous system in which there is an excessive accumulation of alpha-synuclein (a brain protein) in the neurons. The synucleinopathies include Parkinson disease, dementia with Lewy bodies, and multiple system atrophy." Synucleinopathy, Medical Dictionary, https://medical-dictionary.thefreedictionary.com/synucleinopathy.

[5] Proteinopathy is "[a]ny disease or condition that results from the abnormal synthesis, folding, post-translational modification, or deposition of protein in cells or tissues." Proteinopathy, Medical Dictionary, https://medical-dictionary.thefreedictionary.com/proteinopathy.

A-0868-17T1

is highly likely that [Hubert's] cognition has been negatively impacted by the numerous concussions he has experienced, there are other factors that are likely impeding his recovery and cognitive functioning . . . ."

Dr. Tobe's first two reports mirrored the reports of Drs. Serruya and Sestito in noting Hubert's declining health. It was in his last report in January 2016, that Dr. Tobe indicated that the 2013 and 2014 work-related incidents

> have been the causation for the onset of Posttraumatic Parkinsonian Disorder. [Hubert] does not have a known synucleinopathy in his family; therefore, it would not be arguable that he had a preexisting or even a genetic proclivity to develop the disease. Rather his disease was related to the trauma of the incidences altering intracellular function, most particularly in areas brain [sic] inclined to the manifestation of Parkinson's . . . .

Dr. Tobe opined that Hubert was totally disabled from performing his job duties. Although he referenced Hubert's past history of concussions that were detailed in the treating physicians' reports, he did not relate them as a direct cause of Hubert's Parkinson's.

The Board's expert, Mark J. Chelder, Ph.D., a licensed psychologist and clinical neuropsychologist, relied upon his March 2015 report, which indicated he reviewed Drs. Serruya and Sestito's reports, in addition to Hubert's examination with IMX Medical Management Services that he ordered. Dr.

6

Chelder acknowledged Hubert's symptoms that were noted by Dr. Tobe and the treating physicians following the two work-related accidents, and agreed with Dr. Tobe that Hubert was presently totally and permanently disabled from performing his job duties. However, he disagreed with Dr. Tobe that Hubert was suffering from Parkinson's as a direct result of the work-related accidents. He specified that Hubert suffered many head injuries both in and out of work, and "[i]t is commonly clinically accepted that the effects of concussions are cumulative, and can worsen with each successive injury. In [Hubert's] case, his current condition is likely to reflect the residuals of his many head injuries [during his life] . . . and not directly related to any particular work injury."

Due to the experts' conflicting opinions, the ALJ had to determine which one was more credible. She found Dr. Tobe's testimony unpersuasive, holding:

> I **FIND** that Dr. Tobe found many of the post-concussive syndrome symptoms that constitute his present disability back in 2006, including decreased memory processing speed, impaired executive control functions, anxiety, depression, a sleeping disorder and headaches. Dr. Tobe concluded that in 2006 there is a post-concussive syndrome causing a thirty-five percent permanent of total neuropsychiatric disability. Therefore, his opinion that the work-related incidents in 2013 and 2014 are the only cause of petitioner's disability because he now has Parkinson's disease lacks credibility. Dr. Tobe's report noted the dangers of the cumulative effects of the repeated concussions that petitioner sustained in his lifetime.

A-0868-17T1

To further cement her discredit of Dr. Tobe's opinion, the ALJ found that Dr. Tobe failed to indicate that Hubert had Parkinson's in his December 2014 report, eight months after his last work-related accident in April 2014. Dr. Tobe merely noted in the report that Hubert suffered a traumatic brain injury with ongoing post-concussive cephalgia and depression. She found that Dr. Tobe's opinion "was not supported by the evidence," which "shows that [Hubert]'s disability stems from the cumulative effects of various concussions that he sustained during his lifetime."

In finding Dr. Chelder credible, even though he rarely treated patients with Parkinson's, the ALJ was satisfied that he had enough training and experience to diagnose the hallmarks of the disorder and what caused it. She agreed with his evaluation of Hubert's medical history stating:

> I **FIND** that petitioner's treating physicians documented that petitioner sustained multiple concussions beginning as a teenager and continuing through adulthood. The notes of Dr. Serruya and Dr. Sestito set forth that petitioner was involved in multiple car accidents in 1988, 1989[,] and 1990. In 2003, according to those doctors, petitioner was out of work for several months with a particularly severe concussion. Petitioner suffered another serious head injury on January 22, 2005 . . . . Petitioner did not recall a concussion at home in 2008 or at work in 2010, but he saw it noted in the reports of his doctors. Similarly, in March 2013, a few months before the November 2013 work incident, the report notes that he fell in the

shower in his home. Petitioner does not recall that incident either. I **FIND** as fact all of the above injuries in which injuries to the head were involved were contributing factors to petitioner's permanent disability.

Citing Gerba v. Board of Trustees, Public Employees Retirement System, 83 N.J. 174 (1980), the ALJ concluded that Hubert did not prove by a preponderance of the evidence that his disability directly resulted from the two work-related accidents.

The Board subsequently adopted the ALJ's decision. This appeal followed.

Hubert contends that the ALJ did not give enough weight to the reports of his treating doctors, or Dr. Tobe's testimony, and that no deference should be given to the testimony of the Board's expert Dr. Chelder.[6] Hubert further argues that the ALJ erred in applying Gerba, to determine that Hubert's injury was not a direct result of a traumatic event, and that the record does not support the ALJ's findings.

---

[6] Hubert argues that Dr. Chelder's testimony constitutes a "net opinion." This point is unpersuasive because Dr. Chelder was qualified by the ALJ and neither Hubert's expert nor the Board's expert were neurologists or worked with many Parkinson's patients. The Board's expert gave his opinion based on an exam and review of past medical documents, which is sufficient under N.J.R.E. 702 and 703.

According deference to the Board's fact-finding, <u>Circus Liquors, Inc. v. Governing Body of Middletown Twp.</u>, 199 N.J. 1, 9-10 (2009), we conclude its decision is neither "arbitrary, capricious, or unreasonable, or . . . lacks fair support in the record." <u>Russo</u>, 206 N.J. at 27 (quoting <u>In re Herrmann</u>, 192 N.J. 19, 27-28 (2007)). Under <u>Gerba</u>, our Supreme Court held that for a member of the Public Employees' Retirement System to qualify for accidental disability benefits, it need not show that the traumatic event is the "sole or exclusive cause of the disability," but that the alleged traumatic event is "the direct cause, i.e., the essential significant or substantial contributing cause of the disability[.]" 83 N.J. at 187.

We are satisfied "that the evidence and the inferences to be drawn therefrom support" the Board's decision that Hubert's Parkinson's was not the direct result of the 2013 and 2014 work-related accidents, but from a significant prior history of head injuries. <u>Clowes v. Terminix Int'l, Inc.</u>, 109 N.J. 575, 588 (1988). Thus, we will not disturb the Board's determination that Hubert is not entitled to accidental disability benefits.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0868-17T1