**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0981-17T2

IN THE MATTER OF STEVEN
HOTZ, NEW JERSEY
DEPARTMENT OF
CORRECTIONS.

_____

Argued January 28, 2020 – Decided February 13, 2020

Before Judges Yannotti, Currier and Firko.

On appeal from the New Jersey Civil Service Commission, Docket No. 2017-1342.

Joseph Stanley Surman, Jr., argued the cause for appellant Steven Hotz (Surman Law, LLC, attorneys; David J. Heintjes, of counsel and on the brief).

Emily Marie Bisnauth, Deputy Attorney General, argued the cause for respondent New Jersey Department of Corrections (Gurbir S. Grewal, Attorney General, attorney; Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Emily Marie Bisnauth, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent New Jersey Civil Service Commission (Pamela N. Ullman, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

Steven Hotz appeals from a final determination of the Civil Service Commission (Commission), which found that he made false statements of material fact during an investigation of suspected inmate abuse, and that the New Jersey Department of Corrections (NJDOC) was justified in removing him from his position as a Senior Corrections Officer (SCO). We affirm.

I.

On November 10, 2015, an inmate at the NJDOC's Garden State Youth Correctional Facility (GSCF) reported he had been physically abused by several corrections officers. The NJDOC referred the matter to the Special Investigations Division (SID) for review. The inmate told the SID investigators that on November 6, 2015, several custody staff members entered the staff barbershop in the GSCF where he was working and ordered the other inmates to leave.

According to the inmate, the officers punched him and held him down, and an officer cut off his hair using electric clippers. The inmate claimed the officers retaliated because he had allegedly given another officer a "bad" haircut. The inmate identified appellant as one of the officers who was present during

2                                                                    A-0981-17T2

the incident. The NJDOC transferred appellant to another facility while the complaint was investigated.

On March 11, 2016, a SID investigator interviewed appellant. He denied knowledge of the incident and stated he was unfamiliar with the inmate who made the complaint. He said that to the best of his knowledge, the incident did not occur. Appellant suggested someone may have falsely implicated him. He claimed, "I have been lied on before."

Furthermore, in response to the investigator's questions, appellant denied that on November 6, 2015, SCO Ivonne Collazo contacted him by radio and requested that he come to the barbershop or its vicinity. He denied that he forcibly placed the inmate in the barber chair or saw SCO Brian Attardi do so. He also denied seeing Collazo cut the inmate's hair with clippers.

On April 15, 2016, the NJDOC issued a Preliminary Notice of Disciplinary Action (PNDA), which charged appellant with engaging in "[c]onduct unbecoming of a public employee[,]" in violation of N.J.A.C. 4A:2-2.3; physical or mental abuse of an inmate; and violating an applicable NJDOC rule, regulation, policy, or procedure. On April 22, 2016, the NJDOC held a departmental hearing and found there was sufficient evidence to support the charges. The NJDOC suspended appellant without pay, effective immediately.

A-0981-17T2

On May 26, 2016, a SID investigator interviewed appellant a second time. He admitted that during the interview on March 11, 2016, he made false statements about the incident. He said he was in the barbershop on November 6, 2015, and he was familiar with the inmate who made the complaint. He stated that Collazzo had called him on the radio and asked him to report to GSCF's reception area. When he arrived at that location, Collazo directed him to enter the barbershop.

Appellant stated that he entered the barbershop and observed Attardi, who was face-to-face with the inmate. They appeared to be arguing. When the inmate raised his left arm, appellant grabbed it, and Attardi grabbed the inmate's right arm. Appellant and Attardi then placed the inmate in the chair. Appellant stated that immediately thereafter, Collazzo approached the inmate from behind and "buzzed his head with the clippers . . . ."

Appellant said he was surprised when Collazzo cut the inmate's hair, and he asked SCO Jason M. Terhune, who was present at the time getting a haircut, "What the fuck is this about?" Appellant said Terhune shrugged. Appellant then left the barbershop. He stated that he had no idea what he was walking into when he entered the barbershop. Appellant denied he or Attardi physically assaulted the inmate.

4

Appellant also stated that he decided to come forward with the truth at the second interview because he did not know how to address the matter initially. He said he wanted to do the right thing. He claimed others had told him not to say anything and to "just play ball . . . ."

Appellant stated that Collazzo told him she had spoken to a superior officer, who said she should do what she is supposed to do "and it will go away." According to appellant, Collazo stated he would be transferred to another facility for a maximum of six months, after which he would be returned to GSCF.

On July 8, 2016, the NJDOC amended the PNDA and charged appellant with falsification, in violation of the applicable NJDOC rules, policies, and procedures. The amended PNDA stated that under these rules, policies, and procedures, "falsification" is defined as an "[i]ntentional misstatement of material fact in connection with work, employment, application, attendant, or in any record, report[,] investigation or other proceeding."

On September 30, 2016, the NJDOC issued a Final Notification of Disciplinary Action (FNDA), finding that the charges had been sustained. The FNDA stated that in November 2016,

> an incident occurred wherein physical force was used against an inmate. This action led to an SID

A-0981-17T2

> investigation that revealed the following. Officer Steven Hotz was one of [three] [o]fficers who . . . physically abuse[d] the inmate in the [GSCF s]taff [b]arbershop; specifically, by holding him down in the barber chair, punching and slapping him, and cutting his hair off. This constitutes conduct unbecoming, physical abuse of an inmate, and a violation of law enforcement rules, policies and procedures. Total disregard was given as it pertains to the policy as set forth in the Law Enforcement Officers Handbook as well as the NJDOC employee handbook. Additionally, SCO Hotz provide[d] a supplemental interview with the NJDOC Internal Affairs Units, in which he admitted to providing false information during the initial interview.

The NJDOC removed appellant from his position as SCO, effective October 7, 2016.

On October 22, 2016, appellant filed an administrative appeal challenging the NJDOC's action, and the Commission referred the matter to the Office of Administrative Law (OAL) for an evidentiary hearing before an Administrative Law Judge (ALJ). The NJDOC thereafter filed a motion pursuant to N.J.A.C. 1:1-12.5 for partial summary decision on the falsification charge. Appellant opposed the NJDOC's motion and filed a cross-motion for summary decision.

Appellant argued, among other contentions, that the NJDOC failed to file the falsification charge within the time required by N.J.S.A. 30:4-3.11a. The statute provides in pertinent part that a person may not be removed, suspended, fired, or reduced in rank from employment as a State corrections officer for a

violation of the NJDOC's internal rules and regulations unless the complaint charging the violation is filed within forty-five days "after the date on which the person filing the complaint obtained sufficient information to file the matter upon which the complaint is based." Ibid.

On March 24, 2017, the ALJ issued an order, which granted the NJDOC's motion and denied appellant's cross-motion. The ALJ found there was no substantial controversy as to whether appellant: (1) lied in the March 11, 2016 interview when he denied any knowledge of the November 6, 2015 incident at the barbershop; (2) insisted he was not present during the incident; and (3) asserted he played no part in the abuse of the inmate.

The ALJ noted that he had reviewed the video recordings of appellant's March 11, 2016 and May 26, 2016 interviews. The ALJ found that appellant knew the statements he made during the first interview were false. The ALJ rejected appellant's claim that he did not understand the content of his false statements, and his assertion that the March 11, 2016 interview was constitutionally deficient. The ALJ also rejected appellant's contention that he was entitled to summary decision because the NJDOC did not submit an affidavit when it opposed his cross-motion.

7

The ALJ further found there was a genuine issue of material fact as to whether the NJDOC filed the charges within the time required by N.J.S.A. 30:4-3.11a, and that issue would be resolved after an evidentiary hearing. The ALJ stated that the merits of the remaining charges and the penalty for falsification also would be determined after the evidentiary hearing.

The ALJ conducted the hearing on March 29, 2017. Thereafter, the ALJ issued an initial decision finding the NJDOC had not established that appellant physically abused the inmate. The ALJ stated that Terhune corroborated appellant's claim that he had been confused when Collazo cut the inmate's hair. The ALJ also found Terhune testified credibly that he did not see appellant or Attardi strike the inmate.

In addition, the ALJ rejected appellant's contention that the falsification charge was time-barred, noting that appellant's "falsification was apparent at the earliest only after the May 26, 2016" interview. The ALJ decided that the NJDOC had filed the falsification charge within forty-five days after that interview, as required by N.J.S.A. 30:4-3.11a.

The ALJ further found that the NJDOC's decision to remove appellant from his employment was appropriate. The ALJ stated:

> Falsification in the setting of a correctional facility such as [GSCF] strikes at the heart of a correction officer's

responsibility and accountability. [The officer] is an integral actor in a paramilitary organization, subject to its regulatory code and the orders of superiors. Superior officers must depend on the honesty of their subordinates to maintain good order in a dangerous environment. Fellow correction officers must have confidence that they can rely on the truth of information dispensed by their colleague[s]. Such certainty is essential. It is fundamental to secure law enforcement cooperation during those work demands which place at risk officer and inmate safety. [Appellant's] demonstrated dishonesty threatens this arrangement. For all these reasons, termination is appropriate.

Appellant filed exceptions to the ALJ's decision, and the NJDOC filed a response. The Commission thereafter issued its final determination adopting the ALJ's decision. The Commission rejected appellant's claim that the NJDOC failed to file the falsification charge within the time prescribed by N.J.S.A. 30:4-3.11a.

The Commission also determined that the ALJ properly decided the merits of the falsification charge by summary decision and rejected appellant's claim that the March 11, 2016 interview was constitutionally deficient. The Commission found that the penalty of removal was appropriate, and stated that "the egregiousness of . . . appellant's misconduct clearly warrants" termination. This appeal followed.

II.

A-0981-17T2

On appeal, appellant argues: (1) his removal based on the falsification charge must be reversed pursuant to N.J.S.A. 30:4-3.11a; (2) the Commission erred as a matter of law by adopting the ALJ's initial decision; (3) the Commission's decision is arbitrary, capricious, against the weight of the evidence, and contrary to law; (4) the March 11, 2016 interview cannot be the basis for discipline because the interview was "constitutionally offensive" and contrary to the Attorney General's Guidelines pertaining to investigations of law enforcement employees; (5) the NJDOC failed to establish just cause for the discipline imposed; and (6) the penalty of removal is excessive.

Initially, we note that the scope of our review of a final determination of an administrative agency is limited. In re Herrmann, 192 N.J. 19, 27 (2007). "[A] strong presumption of reasonableness attaches" to the agency's decision. In re Carroll, 339 N.J. Super. 429, 437 (App. Div. 2001). We may "intervene only in those rare circumstances in which an agency action is clearly inconsistent with its statutory mission or other State policy." George Harms Constr. Co. v. N.J. Tpk. Auth., 137 N.J. 8, 27 (1994).

Therefore, we will "not disturb an administrative agency's determinations or findings unless there is a clear showing that (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or unreasonable, or (3) the

decision was not supported by substantial evidence." In re Virtua-West Jersey Hosp. Voorhees for a Certificate of Need, 194 N.J. 413, 422 (2008) (citing Herrmann, 192 N.J. at 28); see also Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 9-10 (2009).

III.

Appellant first argues that the Commission erred by finding that the NJDOC filed the falsification charge within the time prescribed by N.J.S.A. 30:4-3.11a. As we stated previously, the statute provides that a State corrections officer may not be removed from employment, suspended, fined, or reduced in rank based on a violation of the NJDOC's internal rules and regulations governing the conduct of its employees unless the charge is filed no later than forty-five days "after the date on which the person filing the complaint obtained sufficient information to file the matter upon which the complaint is based." Ibid.

Here, appellant argues that the NJDOC had "sufficient information" to bring the falsification charge by April 15, 2016. He asserts that on that date, the NJDOC charged another corrections officer, Lieutenant Harry Ervin, with falsification with regard to the November 6, 2015 incident at the

11

barbershop. It appears that Ervin was the officer whose haircut allegedly prompted the incident on November 6, 2015.

The NJDOC charged Ervin with making false statements during the SID's investigation of the incident, specifically with regard to whether Collazo approached him with the inmate at GSCF's central control. The NJDOC pointed out that several witnesses had placed Collazo in that area of the facility and indicated that Collazo had spoken with Ervin in the presence of the inmate.

Appellant argues that if the NJDOC had sufficient information to charge Ervin with falsification on April 15, 2016, it also had sufficient information to charge him with falsification on that date. He also argues that if the NJDOC had sufficient information to charge him with the underlying conduct, despite his denials at the first interview, the NJDOC also had sufficient information to charge him with falsification at that time. We disagree.

The NJDOC had sufficient information to charge Ervin with falsification on April 15, 2016, as the ALJ and Commission found. The NJDOC did not, however, have sufficient information to charge appellant with falsification until appellant admitted during the May 26, 2016 interview that he lied to SID investigators during the March 11, 2016 interview.

As we noted previously, the inmate asserted that appellant was involved in the November 6, 2015 incident, but appellant denied that allegation. He stated that he had been "lied on before." The ALJ and Commission determined that the NJDOC did not have sufficient evidence to support a charge of falsification against appellant until the May 26, 2016 interview, when appellant admitted he lied during the March 11, 2016 interview.

We are convinced there is sufficient credible evidence in the record to support the ALJ's and the Commission's findings. The ALJ and Commission correctly determined that the NJDOC filed the falsification charge within the time required by N.J.S.A. 30:4-3.11a.

IV.

Next, appellant argues the Commission's final decision is arbitrary, capricious, and against the weight of the evidence. He notes that after the NJDOC filed its motion for partial summary decision on the falsification charge, he submitted a cross-motion for summary decision on that charge.

Appellant asserts that because the NJDOC did not submit an affidavit in response to his cross-motion, as required by N.J.A.C. 1:1-12.5(b), the ALJ was required to grant his cross-motion and dismiss the falsification charge as a matter of law. N.J.A.C. 1-1:12.5(b) provides:

> When a motion for summary decision is made and supported, an adverse party in order to prevail must by responding affidavit set forth specific facts showing that there is a genuine issue which can only be determined in an evidentiary proceeding. If the adverse party does not so respond, a summary decision, if appropriate, shall be entered.

We reject appellant's argument that the rule required the ALJ to grant his cross-motion. In its motion, the NJDOC established that there were no genuine issues of material fact relevant to the falsification charge, and that it was entitled to partial summary decision on the charge. There was no need for the NJDOC to submit another affidavit in response to appellant's cross-motion, setting forth specific facts showing the absence of a genuine issue of material fact relevant to the falsification charge.

Moreover, the rule states that a summary decision should be entered only "if appropriate." Ibid. Here, the ALJ found there were no genuine issues of material fact regarding the merits of the falsification charge, and the NJDOC was entitled to partial summary decision on the charge. The Commission agreed. Thus, it would not have been "appropriate" for the ALJ to grant appellant's cross-motion.

V.

14

Appellant contends his statements during the March 11, 2016 interview cannot be used as a basis for discipline. He asserts that the interview was "constitutionally offensive" and contrary to guidelines issued by the Attorney General, which apply when certain law enforcement employers conduct internal interviews of employees suspected of misconduct.

Here, the record shows that on December 10, 2015, appellant's attorney wrote to the Commissioner of the NJDOC and stated he was representing appellant in the internal investigation of the barbershop incident. The attorney stated that appellant was invoking his right to remain silent, and the NJDOC should contact him before interviewing appellant.

On appeal, appellant asserts the NJDOC failed to notify his attorney about the March 11, 2016 interview and "forced" him to attend the interview "under threat of termination . . . ." He claims the statements he made during this interview were "coerced" and "should not be considered as a basis for discipline."

There is, however, no evidence that before the March 11, 2016 interview, the SID investigators were aware of the letter that appellant's attorney addressed to the Commissioner. Even if the SID had been informed of the letter before the interview, appellant was under no threat of criminal prosecution at that time.

The record shows that the NJDOC had referred the matter to the Burlington County Prosecutor's Office (BCPO), and on March 8, 2016, the BCPO declined to charge appellant with any criminal offense regarding the incident.

In addition, the record does not support appellant's assertion that his statements were "coerced." Rather, the record shows that appellant knew he was a subject of the NJDOC's internal investigation of the November 6, 2015 incident. Indeed, before the March 11, 2016 interview began, appellant signed a document confirming this fact.

Appellant also acknowledged that he had the right to have a union representative present during the interview and the right to "stop answering questions at any time until union representation is present." He elected to have his union representative on hand during the interview.

Furthermore, appellant answered the investigator's questions voluntarily. He never asserted a right to counsel or refused to answer the investigator's questions unless his attorney was present. The record therefore supports the Commission's determination that the March 11, 2016 interview was not "constitutionally offensive," as appellant claims.

Appellant further argues that the SID investigators interviewed him in a manner "contrary to every directive of proper investigation of law enforcement

16

employees by law enforcement agency employers." In support of this argument, appellant cites the <u>Attorney General Guidelines</u>, "Internal Affairs Policy & Procedures" (rev. July 2014).

We note, however, that the NJDOC is expressly exempt from these guidelines, which state that "State and county correctional agencies . . . are under no obligation to implement the provisions of this policy." Moreover, the guidelines apply when a law enforcement officer's conduct may implicate a violation of a criminal statute and an agency's rules and regulations. As we stated previously, when the SID investigators interviewed appellant on March 11, 2016, he was not under threat of criminal prosecution.

## VI.

Appellant argues that the NJDOC failed to establish "just cause" to remove him from his employment as a corrections officer. He claims the NJDOC did not carry its burden to justify disciplining him. He asserts the NJDOC's decision to remove him from his position was "frivolous and arbitrary."

Appellant also argues that the NJDOC "failed to show by a preponderance of the evidence that [he] acted in any inappropriate fashion that could warrant discipline." He claims the evidence establishes that he "acted professionally and

appropriate[ly] under all of the given circumstances." He asserts the NJDOC "failed to [present] any competent evidence that . . . [he] abused an inmate."

As we have explained, the ALJ found the NJDOC had not sustained the charges that appellant physically abused the inmate during the November 6, 2015 incident. The Commission affirmed the dismissal of those charges. The record established, however, that appellant made false and misleading statements regarding the incident when he was interviewed on March 11, 2016.

Appellant's claim that he acted at all times in a professional and appropriate manner is patently without merit. Here, the Commission determined the NJDOC carried its burden by proving by a preponderance of the evidence that appellant violated the NJDOC's rules, regulations, and procedures, which prohibit "falsification" of material facts during an internal investigation. We are convinced there is sufficient credible evidence in the record to support the Commission's decision. Its decision affirming the NJDOC removal of appellant from his position as a corrections officer was not arbitrary, capricious, or unreasonable.

VII.

Appellant also contends the penalty of removal is excessive. He asserts his "otherwise largely unblemished work history mandates that the sanction of

[r]emoval is shocking to the conscience."  He claims "the termination of his career is so wide of the mark that the [c]ourt's conscience should not permit it."  Again, we disagree.

"A reviewing court should alter a sanction imposed by an administrative agency only 'when necessary to bring the agency's action into conformity with its delegated authority.'"  Herrmann, 192 N.J. at 28 (quoting In re Polk, 90 N.J. 550, 578 (1982)).  A reviewing court "has no power to act independently as an administrative tribunal or to substitute its judgment for that of the agency."  Ibid. (quoting Polk, 90 N.J. at 578).

When reviewing an agency's disciplinary action, we consider "whether such punishment is so disproportionate to the offense, in light of all the circumstances, as to be shocking to one's sense of fairness."  Id. at 28-29 (quoting Polk, 90 N.J. at 578).  Appellant contends his removal is shocking and unfair.  We disagree.

In its decision, the Commission pointed out that appellant is a corrections officer, "who, by the very nature of his job duties, is held to a higher standard of conduct than other public employees."  The Commission stated that "appellant blatantly lied in an interview about his knowledge of and involvement in the alleged abuse of an inmate."  The Commission considered imposing

19

"progressive discipline," but ultimately determined that "the egregiousness of the appellant's misconduct clearly warrants removal from such a safety sensitive law enforcement position, regardless of his disciplinary history."

In Hermann, the Court recognized that "progressive discipline is a worthy principle but it is not subject to universal application when determining a disciplined employee's quantum of discipline." 192 N.J. at 36. Progressive discipline may be "bypassed when an employee engages in severe misconduct, especially when the employee's position involves public safety and the misconduct causes risk of harm to persons or property." Id. at 33.

Here, the Commission found that although appellant did not physically abuse the inmate, his misconduct was "sufficiently egregious, in and of itself, to support his removal." There is sufficient credible evidence in the record to support that determination. We conclude appellant's removal is not "so disproportionate to the offense, in light of all the circumstances, as to be shocking to one's sense of fairness." Herrmann, 192 N.J. at 28-29 (quoting Polk, 90 N.J. at 578).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0981-17T2