**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3143-16T4

IN THE MATTER OF
FORTUNATO MONTELLA,
BOROUGH OF STANHOPE.

_____

Argued November 13, 2018 – Decided November 27, 2018

Before Judges Haas and Mitterhoff.

On appeal from the Civil Service Commission, Docket Nos. 2015-2541 and 2016-2558.

Robert J. Merryman argued the cause for appellant/ cross-respondent Borough of Stanhope (Apruzzese, McDermott, Mastro & Murphy, PC, attorneys; Robert J. Merryman, of counsel and on the brief; Deborah Bracaglia, on the brief).

Peter B. Paris argued the cause for respondent/cross-appellant Fortunato Montella (Law Offices of David Beckett, attorneys; Peter B. Paris, of counsel and on the brief).

Pamela N. Ullman, Deputy Attorney General, argued the cause for respondent Civil Service Commission (Gurbir S. Grewal, Attorney General, attorney; Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Pamela N. Ullman, on the brief).

PER CURIAM

The Borough of Stanhope (Borough) appeals from the October 22, 2015 decision of the Civil Service Commission (Commission) that: (1) held that the Borough's decision to remove Fortunato Montella from his position as a Borough police officer was not justified; (2) modified the sixty working day suspension recommended by the Administrative Law Judge (ALJ) for Montello to a 120 working day suspension; and (3) ordered Montella's reinstatement with appropriate back pay, benefits, and seniority following the completion of his suspension. The Borough also challenges the Commission's final decision of March 24, 2017, which established the amount of mitigated back pay and benefits due Montella following his return to work.

Montella has filed a cross-appeal, and argues that the Commission should not have disturbed the sixty working day suspension set by the ALJ. He also asserts that he was entitled to additional back pay and benefits.

Having considered the parties' arguments in light of the record and applicable law, we affirm the Commission's decisions in all respects.

The parties are fully familiar with the underlying facts of this case as thoroughly set forth in the ALJ's initial decision following a four-day hearing. Therefore, a summary will suffice here.

A-3143-16T4

On September 2, 2014, Montella was conducting routine traffic stops in the Borough. After completing this assignment, he intended to drive his patrol car to the Borough-approved car wash in Roxbury, which was about 1.5 miles away. After that, he planned to take his lunch break.

Montella's sister called him as he was in the midst of his last traffic stop for the shift. Montella testified that his sister was twelve years younger than him and, although she was an adult, she frequently called him throughout the day for assistance and guidance. The sister told Montella that she had been in a car accident in Roxbury, was not hurt, and she and the other driver were in the parking lot of a bar that Montella knew was near the car wash. Montella told his sister to "call the cops" in Roxbury to report the accident.

After completing the traffic stop, Montella began driving to Roxbury. Along the way, he debated whether he should go to the car wash as planned, or first check on his sister at the nearby parking lot. As he drove through Netcong, the town that lay between Stanhope and Roxbury, Montella activated his emergency lights three times in order to get past slower moving traffic. He also exceeded the posted speed limit.

When Montella reached a jughandle near the car wash, he told the Borough dispatch that he was going to be at the car wash. However, when he

saw there was no wait at the car wash, and that the Roxbury police had not yet responded to the bar parking lot, Montella went there instead. When he arrived, he spoke to his sister and the other driver. Montella's sister stated she was at fault for the accident. The other driver did not want to involve the police, but Montella told them that even though it was a minor accident, the police needed to be called. Montella then called dispatch, advised he was at the scene of his sister's accident, obtained the number for the Roxbury Police Department, and reported the accident. He then returned to his patrol car, and had no further interaction with his sister or the driver.

While he was waiting for the Roxbury police, Montella took a call from the Netcong Chief of Police. Netcong had received a report that a Stanhope officer had been speeding and the Chief called the Borough, which advised that Montella was the officer on duty. Montella apologized to the Netcong Chief and explained that he had been on the way to his sister's accident scene. Montella then called his own Chief and told him that he might be receiving a call from his counterpart in Netcong, and explained why. Thus, the Borough Chief was aware that Montella had gone to assist his sister.

Montella stayed at the bar parking lot until after the Roxbury police left. He drove to the car wash and, after taking care of that task, began his lunch

break. While waiting for his food order, Montella went to his patrol car and completed "a Computer Aided Dispatch (CAD) report." When, as was the case here, an officer is involved in a call that does not turn into an "incident" or result in the issuance of a ticket, he or she must type a short "electronic report" describing what happened, using a laptop computer located in the patrol car.

Montella often had difficulty determining what information to include in the CAD reports, which were then reviewed by a sergeant. If the sergeant believed the report was inaccurate or left out details, the sergeant would tell Montella to redo it. On this occasion, Montella typed the following CAD report describing the event with his sister:

> I, Ofc. F. Montella was near the Roxbury car wash when I was notified that there was a motor vehicle accident with the vehicles parked at [Roxbury] bar. Both parties were out of their vehicles and stated that they were okay. I called Roxbury police via cell phone and waited on scene until Roxbury Patrol arrived. Upon their arrival I cleared. No further action taken.

This report was inaccurate because Montella was in the Borough when he was notified by his sister of the accident. In addition, he stayed in the parking lot for several minutes after the Roxbury officers left the scene.

Although the Borough Chief of Police had been aware that Montella went to the accident scene before he prepared the CAD report, the Chief subsequently

5

charged Montella with conduct unbecoming an officer, and sought to terminate his employment for filing a false police report. The Chief also alleged that Montella should be dismissed for "other sufficient cause," specifically, improperly activating the patrol car's emergency lights, and speeding. After the charges and termination were upheld at a departmental hearing, Montella appealed his removal to the Commission, which referred the matter to the Office of Administrative Law for hearing as a contested case.

At the conclusion of the hearing, the ALJ rendered a written initial decision recommending a reduced penalty. The ALJ found that Montella "did not try or intend to deceive anyone in his or any other police department with his CAD statement." In this regard, the ALJ noted that the Borough Chief of Police knew he had been at the scene of his sister's accident in Roxbury before he completed the report. Finding that "[i]t strains logic to believe that [Montella] intended to make a false police statement when he wrote the cryptic CAD report on the" matter, the ALJ concluded that Montella "did not falsify the CAD report but did engage in drafting a sloppy, short narrative, under circumstances that included being on his lunch hour and paying insufficient attention to the details of this . . . event." The ALJ further found that Montella's use of the emergency lights and exceeding the speed limit were contrary to

6

department policy and, therefore, warranted disciplinary action. After considering Montella's past disciplinary record,[1] the ALJ recommended the imposition of a sixty working day suspension without pay.

Both parties filed exceptions. In its October 22, 2015 decision, the Commission disagreed with the ALJ's conclusion that Montella's CAD report was merely "sloppy" and, instead, found it was false because Montella knew he was in the Borough when he learned of the accident and because, contrary to what he wrote in the report, he stayed at the accident scene in his police car after the Roxbury police left the parking lot. The Commission further found that "falsification of a record by a Civil Service employee [was] a serious offense" that warranted the imposition of a more severe penalty than that recommended by the ALJ.

After considering all of the facts of the case, including Montella's desire to assist his sister and his prior disciplinary record, the Commission decided to double the penalty proposed by the ALJ to a 120 working day suspension rather

---

[1] The Borough had disciplined Montella eight times during his eleven-year career as a police officer. He was suspended for four days in January 2010 for withholding information regarding an offense he had witnessed; for seven days in July 2009 for calling out sick while he was actually on vacation; and for eight days in January 2011 for failing to make a mandatory arrest during, and prepare required paperwork concerning, a domestic violence investigation. The Borough also reprimanded Montella for several other infractions over the years.

than terminating him. The Commission noted that this major suspension would "serve as an indication that any further infractions committed by [Montella] will potentially subject him to removal from employment."

When the parties could not agree on the amount of mitigated back pay and benefits due to Montella, the Commission rendered its March 24, 2017 decision addressing this issue. After considering the Borough's and Montella's written submissions concerning, among other things, Montella's efforts to find suitable work, the unemployment compensation he received, and the income he was able to earn while he was suspended, the Commission found that Montella was entitled to $34,862.21 in back pay, and an additional $2,825.82 for maintaining his health insurance. The Borough's appeal, and Montella's cross-appeal, followed.[2]

On appeal, the Borough argues that the Commission erred by failing to terminate Montella's employment and in concluding that his efforts at finding work during his suspension were sufficient to justify the award of mitigated back pay. In his cross-appeal, Montella asserts that the Commission should not have doubled his suspension, and should have awarded him additional back pay and

---

[2] On May 8, 2018, another panel of this court granted the Borough's motion to stay its payment of the back pay award pending appeal.

health care benefits. We disagree with these contentions and affirm substantially for the reasons that are thoroughly detailed in the Commission's October 22, 2015, and March 24, 2017 comprehensive written decisions. We add the following comments.

Our scope of review of an administrative agency's final determination is limited. In re Herrmann, 192 N.J. 19, 27 (2007). "[A] strong presumption of reasonableness attaches" to the agency's decision. In re Carroll, 339 N.J. Super. 429, 437 (App. Div. 2001) (quoting In re Vey, 272 N.J. Super. 199, 205 (App. Div. 1993), aff'd, 135 N.J. 306 (1994)). Additionally, we give "due regard to the opportunity of the one who heard the witnesses to judge . . . their credibility." In re Taylor, 158 N.J. 644, 656 (1999) (quoting Close v. Kordulak Bros., 44 N.J. 589, 599 (1965)).

The burden is upon the appellant to demonstrate grounds for reversal. McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 563 (App. Div. 2002); see also Bowden v. Bayside State Prison, 268 N.J. Super. 301, 304 (App. Div. 1993) (holding that "[t]he burden of showing the agency's action was arbitrary, unreasonable[,] or capricious rests upon the appellant"). To that end, we will "not disturb an administrative agency's determinations or findings unless there is a clear showing that (1) the agency did not follow the law; (2) the decision

was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence." In re Application of Virtua-West Jersey Hosp. Voorhees for a Certificate of Need, 194 N.J. 413, 422 (2008).

When an agency decision satisfies such criteria, we accord substantial deference to the agency's fact-finding and legal conclusions, acknowledging "the agency's 'expertise and superior knowledge of a particular field.'" Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 10 (2009) (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)). We will not substitute our judgment for the agency's even though we might have reached a different conclusion. In re Stallworth, 208 N.J. 182, 194 (2011); see also Taylor, 158 N.J. at 656-57 (discussing the narrow appellate standard of review for administrative matters).

Our deference to agency decisions "applies to the review of disciplinary sanctions as well." Herrmann, 192 N.J. at 28. As our Supreme Court recently made clear, "so long as the discipline . . . falls within a continuum of reasonable outcomes, we must defer, for we have no charge to substitute our judgment for that of the statutorily authorized decisionmaker." In re Hendrickson, ___ N.J. ___ (2018) (slip op. at 29).

Applying these principles here, we discern no basis for disturbing the Commission's decision to impose a major, 120 working day suspension, with mitigated back pay and benefits. The Commission "is the entity charged with keeping State-government-wide standards of employee performance relatively consistent in disciplinary matters[.]" Herrmann, 192 N.J. at 37. As the Supreme Court held in Herrmann:

> A reviewing court should alter a sanction imposed by an administrative agency only "when necessary to bring the agency's action into conformity with its delegated authority. The Court has no power to act independently as an administrative tribunal or to substitute its judgment for that of the agency" . . . In light of the deference owed to such determinations, when reviewing administrative sanctions, "the test . . . is 'whether such punishment is so disproportionate to the offense, in light of all the circumstances, as to be shocking to one's sense of fairness.'" The threshold of shocking the court's sense of fairness is a difficult one, not met whenever the court would have reached a different result.
>
> [Id. at 28-29 (second alteration in original) (citations omitted) (quoting In re Polk, 90 N.J. 550, 578 1982)).]

Under the idiosyncratic circumstances of this case, the Commission reasonably found that removal of Montella was too severe a discipline action, especially where the Borough Chief of Police knew that Montella had gone to the scene of his sister's accident prior to his completion of the CAD report. In

11

the ordinary case, an officer would have been permitted to correct the report if it was misleading or incomplete. However, the Chief did not give Montella that opportunity here. On the other hand, the Commission properly determined that the sixty working day suspension recommended by the ALJ was too lenient in light of the seriousness nature of Montella's actions, which involved him submitting a false CAD report, misusing his patrol car's emergency lights, and speeding.

Although we do not condone Montella's actions, we believe that in light of the unique facts of this case, the Commission struck an appropriate balance between the competing concerns involved. The 120 working day suspension, which was the most severe penalty short of suspension that the Commission could impose, N.J.A.C. 4A:2-2.4(a), was clearly not so disproportionate to the infractions involved in this case as to be shocking to one's sense of fairness.

We also perceive no basis for altering the Commission's award of mitigated back pay and payment for health benefits to Montella following the conclusion of his lengthy suspension. Contrary to the parties' competing contentions, the Commission followed the governing regulation, N.J.A.C. 4A:2-2.10, in considering Montella's request for back pay and benefits. It carefully examined the documentation each party submitted concerning Montella's search

for suitable work during the suspension, his receipt of unemployment compensation benefits, and his attempt to secure health insurance.

At the conclusion of its review, the Commission made findings of fact and conclusions of law that were firmly grounded in the record. As a result, the Commission's determinations on these issues were supported by substantial credible evidence in the record and were neither arbitrary, capricious, or unreasonable.

Affirmed.[3]

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[3] In light of this determination, we vacate the May 8, 2018 order staying the Commission's decision.

A-3143-16T4