**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2607-18T3

IN THE MATTER OF THE
NEW JERSEY STATE BOARD
OF EXAMINERS OF HEATING,
VENTILATING, AIR CONDITIONING
AND REFRIGERATION (HVACR)
CONTRACTORS, THE DIVISION
OF CONSUMER AFFAIRS AND
SMART NEW JERSEY STATE
COUNCIL, DAVID CASTNER
AND JAMES HARPER (HVACR
LICENSE HOLDERS).

_____

Argued March 10, 2020 – Decided June 2, 2020

Before Judges Messano, Ostrer and Susswein.

On appeal from the New Jersey Department of Law and Public Safety, Division of Consumer Affairs.

Mark Edward Belland argued the cause for appellants Smart New Jersey State Council, David Castner and James Harper (O'Brien Belland & Bushinsky, LLC, attorneys; Robert F. O'Brien and David Francis Watkins, on the briefs).

Joseph Andrew Donofrio, Deputy Attorney General, argued the cause for respondents State Board of Heating, Ventilating, Air Conditioning and

Refrigeration Contractors and the Division of Consumer Affairs (Gurbir S. Grewal, Attorney General, attorney; Sookie Bae, Assistant Attorney General, of counsel; Joseph Andrew Donofrio, on the brief).

Raymond George Heineman, Jr. argued the cause for respondent Keystone Mountain Lakes Regional Council of Carpenters (Kroll Heineman Carton LLC; attorneys; Raymond George Heineman Jr., of counsel and on the brief; Seth B. Kennedy, on the brief).

PER CURIAM

This appeal requires us to consider a decision made by the New Jersey State Board of Examiners of Heating, Ventilating, Air Conditioning and Refrigeration (HVACR) Contractors (the Board) that "commercial installation of . . . laboratory fume hoods is not within the exclusive and sole scope of practice of [a] licensed master HVACR contractor." The Board is charged with administering the State Heating, Ventilating, Air Conditioning and Refrigeration Contracting License Law, N.J.S.A. 45:16A-1 to -28 (the Law), including the examination and licensing of HVACR professionals and the promulgation of appropriate regulations. N.J.S.A. 45:16A-4.

Among other things, the Law defines HVACR as "the installation, servicing, connecting, maintenance or repair of" literally dozens of items and apparatus. N.J.S.A. 45:16A-2. "[V]entilation and exhaust systems" appear on the list, but fume hoods do not. The Law also defines a "[m]aster [HVACR]

2

contractor" as a person or legal entity that "advertises, undertakes or offers to undertake for another the planning, laying out, supervising, installing, servicing or repairing of HVACR systems, apparatus or equipment." Ibid. The Law prohibits any unlicensed "person, firm, partnership, corporation or other legal entity . . . [from] engag[ing] in the business of HVACR contracting or advertis[ing] in any manner as a Master HVACR contractor or use the title or designation of 'licensed Master HVACR contractor' or 'Master HVACR contractor[,]'" and subjects violators to financial penalties and criminal prosecution. N.J.S.A. 45:16A-7(b) and (c). The Law specifically does not "prevent any person licensed by the State, including, but not limited to, architects, professional engineers, electrical contractors, master plumbers, or any chimney service professional registered as a home improvement contractor with the Division of Consumer Affairs, from acting within the scope of practice of his profession or occupation[.]" N.J.S.A. 45:16A-8. Another section of the Law provides specific exemptions to licensed master plumbers and electrical contractors for the installation, maintenance and repair of a long list of specific items. N.J.S.A. 45:16A-27.

The dispute between appellant, the New Jersey State Council of the Sheet Metal Workers International Association (the Sheet Metal Workers), and the

carpenters' trade (the Carpenters), represented in this appeal by respondent, the Keystone Mountain Lakes Regional Council of Carpenters, formerly the Northeast Regional Council of Carpenters, as to whether the installation of fume hoods is exclusively within the licensure of the HVACR trade has gone on for years. Appellant David Castner is a licensed master HVACR contractor and marketing representative and organizer for the Sheet Metal Workers Local 22. In January 2016, Castner sent an email to the Board inquiring about the scope of one of its regulations, N.J.A.C. 13:32A-1.2, which sets forth definitions that track those contained in the Law itself. Castner posited his interpretation of the regulation as meaning "a contractor that is installing a fume hood as part of casework . . . should also have to be a licensed HVACR contractor." The Board considered this email and on March 30, 2016, sent Castner a letter (the 2016 decision) stating "this work remains within the scope of practice for the Licensed Master HVACR Contractors."

Appellant James Harper is a licensed master HVACR contractor and financial secretary-treasurer and business agent for the Sheet Metal Workers Local 25. On May 2, 2017, Harper emailed the Board and asked it to investigate "a[n] unlicensed HVACR contractor [ScientifiX] installing fume hoods at [a

laboratory] construction site[.]" Harper said he had "notified ScientifiX of the HVACR license requirement" by referencing the Board's 2016 decision.

Apparently, the Board's Executive Director contacted the company, which responded in May 2017.[1] ScientifiX asserted a "serious misunderstanding" about fume hoods and included a copy of a preexisting labor agreement between the Carpenters and other trade associations that defined the Carpenters' "work jurisdiction" to include "[t]he installation of laboratory equipment including . . . fume hoods[.]" In its letter, the company noted that laboratory fume hoods are not included within N.J.A.C. 13:32A-1.2's definition of HVACR, and that a fume hood is "nothing more than a box" without an "integral fan or blower attached[.]" ScientifiX emphasized that in installing the fume hoods, it made no "mechanical connections[,]" which would be made only by "[t]he HVACR contractor . . . the plumbers . . . and the VAV controls contractor[.]"

Also, in May 2017, the president of the Carpenters notified the Board that there was an ongoing "[j]urisdictional [d]ispute" with the Sheet Metal Workers "over [i]nstallation of [f]ume [h]oods." He claimed that ScientifiX and another company were targeted by the Sheet Metal Workers, and, for more than fifty

---

[1] According to its letterhead, ScientifiX deals in "laboratory furniture & equipment."

A-2607-18T3

years, it was understood that the Carpenters attached the fume hoods to the accompanying laboratory furniture, and the Sheet Metal Workers, pursuant to agreements with HVACR contractors, connected the fume hoods to a commercial HVACR systems. He cautioned the Board not to intervene, based on the exclusive authority of the National Labor Relations Board (NLRB) to decide trade union jurisdictional disputes.

As disclosed by the Board's October 2017 minutes, it had considered Harper's complaint during an executive session in June and voted unanimously that fume hood installation "remains within the scope of practice of the Master HVACR Contractor[] but is not exclusive to the HVACR license." The Sheet Metal Workers sought further review, submitting a "full position statement" and exhibits for the Board's consideration. The Carpenters did likewise.

On January 2018, after a review of the materials submitted, the Board unanimously decided that "'fume hoods' are not explicitly stated in the definition of HVACR found at N.J.S.A. 45:16A-2[,]" and it declined to determine "whether the sheet metal workers should be the only ones performing the installation of 'fume hoods' based on the U.S. Supreme Court decision in North Carolina State

Board of Dental Examiners v. Federal Trade Commission[,]" 574 U.S. 494 (2015).[2]

The Sheet Metal Workers sought reconsideration of the decision, and, in response, the Board formed a committee to determine "which trade, (or trades) should be allowed to install fume hoods." In December, the committee made its final recommendations to the Board, which are reflected in the minutes of the Board's meeting.

The committee found "commercial installation of laboratory fume hoods is not within the sole and exclusive jurisdiction of the New Jersey licensed master HVACR contractor." It concluded that "the installation of the fume hoods simply involves attaching them to laboratory counters and bases[,]" which "does not implicate or otherwise affect the mechanical processes of the ventilation system[,]" or involve "tools [or] skill set[s]. . . exclusive to the licensed master HVACR contractor, as . . . evidenced by the historical and current installation of these[] fume hoods by the carpenters." The committee also found the attachment itself is not integral to "ventilation and exhaust

---

[2] In Board of Dental Examiners, the United States Supreme Court held "that a state board on which a controlling number of decision makers are active market participants in the occupation the board regulates . . . [may not] invoke state-action antitrust immunity[]" unless the board is under the "active supervision" of the state. 574 U.S. at 511–12.

systems" delineated in N.J.S.A. 45:16A-2. The committee found "the exclusive jurisdiction of the licensed master HVACR contractor concerning these ventilation systems begins with necessary connection of the ventilation lines to the hoods, as well as all of the other mechanical processes thereafter."

The Board formally adopted the committee's recommendation on January 8, 2019 (the 2019 Decision), and this appeal followed.

## II.

Appellants contend the 2019 decision was premised on "significant legal and factual errors," the Board's factual findings were "not supported by substantial evidence[,]" and an evidentiary hearing was required to resolve disputed facts. They also argue the 2019 decision created a statutory exception to the Act that had general application and, therefore, the Board violated the Administrative Procedures Act (APA), N.J.S.A. 52:14B-1 to -15, by not engaging in formal rulemaking. Lastly, appellants contend the Board improperly decided a labor dispute pre-empted by federal law. Appellants urge us to vacate the 2019 decision and "order that [the Board's] 2016 [decision] requiring an HVACR license for fume [hood] installation be enforced."

Our review is informed by well-known standards. "Judicial review of agency determinations is limited." Allstars Auto Grp. v. N.J. Motor Vehicle

Comm'n, 234 N.J. 150, 157 (2018) (citing Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)). "Courts generally afford substantial deference to the actions of administrative agencies such as the Board." In re License Issued to Zahl, 186 N.J. 341, 353 (2006) (citing Matturi v. Bd. of Trs., Judicial Ret. Sys., 173 N.J. 368, 381 (2002)). We only consider whether the Board's decision was "'arbitrary, capricious, or unreasonable,' . . . 'violate[d] express or implied legislative policies,' . . . 'offend[ed] the United States Constitution or the State Constitution,' or was based on findings 'not supported by substantial, credible evidence in the record.'" In re Eastwick Coll. LPN-to-RN Bridge Program, 225 N.J. 533, 541 (2016) (quoting Univ. Cottage Club of Princeton N.J. Corp. v. N.J. Dep't of Envtl. Prot., 191 N.J. 38, 48 (2007)).

"A reviewing court 'must be mindful of, and deferential to, the agency's "expertise and superior knowledge of a particular field."'" Allstars Auto Grp., 234 N.J. at 158 (quoting Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 10 (2009)). Furthermore, "we must give great deference to an agency's interpretation and implementation of its rules enforcing the statutes for which it is responsible." In re Freshwater Wetlands Prot. Act Rules, 180 N.J. 478, 488–89 (2004) (citing In re Distribution of Liquid Assets, 168 N.J. 1, 10–

11 (2001)).  "However, a reviewing court is 'in no way bound by [an] agency's interpretation of a statute or its determination of a strictly legal issue.'"  Allstars Auto Grp., 234 N.J. at 158 (alteration in original) (quoting Dep't of Children & Families, Div. of Youth & Family Servs. v. T.B., 207 N.J. 294, 302 (2011)).

## A.

Appellants argue the Board provided conflicting interpretations of the scope of the Act's licensure, namely, that fume hood installation requires an HVACR license (purportedly, the 2016 Decision) but is not exclusive to that license (the 2019 Decision).  They argue the 2019 decision improperly created a "statutory exception" to the licensure requirement in favor of other unspecified trades.  This, according to appellants, renders the 2019 Decision vague, constitutionally unenforceable and contrary to the public safety concerns that undergird the Act.

Appellants' argument rests on two premises: first, that installation of fume hoods is contained within the statutory definition of HVACR in N.J.S.A. 45:16A-2; and second, that the 2016 Decision required HVACR-licensed master contractors install fume hoods.  Both predicates are incorrect.

The definition of "HVACR" makes no mention of fume hoods, although it includes, among other things, "the installation . . . of . . . ventilation and

exhaust systems . . . and appurtenances[.]" N.J.S.A. 45:16A-2. The Deputy Attorney General acknowledged during argument before us that a fume hood is part of an "exhaust system."

However, the 2019 Decision reflected the Board's considered judgment of substantial material furnished by the Sheet Metal Workers and the Carpenters, as well as the opinion of professionals who sat on the Board's designated special committee. The Board furthermore considered "the issue of public safety" in determining whether the "simple attachment of the hoods to the countertops" was "integral to the overall operation or safe functioning of a ventilation system." The Board concluded that the methods or skill sets involved in the installation or attachment of fume hoods to furniture cabinets do not implicate "ventilation and exhaust systems[,]" as those terms are used in N.J.S.A. 45:16A-2, and a HVACR license is required only when a fume hood must be connected to the ventilation lines. We will not substitute our judgment for that of the Board, whose decision was not arbitrary, capricious or unreasonable, was based on considered evaluation of the substantial evidence before it and did not violate the statutory or regulatory scheme under the Act.

The second premise of appellants' argument results from a misreading of the 2016 decision. As noted above, the Board's communication to Castner only

said the installation of fume hoods "remains within the scope of practice for the Licensed Master HVACR Contractors."  The Board never said the work was exclusively within the HVACR licensure.  We find no reason to reverse the 2019 decision on these grounds.

B.

Appellants argue the Board created "an HVACR licensing exception beyond its statutory mandate" that had general application, and, therefore, the Board violated the APA's requirement for formal rulemaking.  They also contend that factual disputes presented by the Sheet Metal Workers' and the Carpenters' submissions required an evidentiary hearing.  We again disagree.

Informal agency action, as opposed to formal rulemaking, is "any determination that is taken without a trial-type hearing, including investigating, publicizing, negotiating, settling, advising, planning, and supervising a regulated industry."  Nw. Covenant Med. Ctr. v. Fishman, 167 N.J. 123, 136–37 (2001) (citing In re Request for Solid Waste Util. Customer Lists, 106 N.J. 508, 519 (1987)).  "[I]nformal action constitutes the bulk of the activity of most administrative agencies."  In re Request for Solid Waste Util. Customer Lists, 106 N.J. at 518.  "An agency has discretion to choose between rulemaking, adjudication, or an informal disposition in discharging its statutory duty,"

12

Northwest Covenant Medical Center., 167 N.J. at 137, and generally, "courts defer to the procedure chosen by the agency in discharging its statutory duty." In re Request for Solid Waste Util. Customer Lists, 106 N.J. at 519.

As noted already, the Board did not create a statutory exception to the licensure requirements. Instead, it interpreted the Act and the duly promulgated regulations thereunder that defined HVACR. It did so in the context of responding directly to a complaint brought by the Sheet Metal Workers as to specific construction projects. Again, contrary to appellants' assertion, the 2019 decision did not change existing guidance because the 2016 decision never stated that the installation of fume hoods was exclusively within the HVACR licensure.

We also disagree with appellants' assertion that the Board was required to conduct an evidentiary hearing because the two trades presented disputed claims about the installation of fume hoods. "An evidentiary hearing is mandated only when the proposed administrative action is based on disputed adjudicative facts." In re Final Agency Decision of Bd. of Exam'rs of Elec. Contractors, 356 N.J. Super. 42, 49 (App. Div. 2002). Adjudicative facts "answer the questions of who did what, where, when, how, why, [and] with what motive or intent." Ibid. (alteration in original) (quoting High Horizons Dev. Co. v. State, Dep't of

13

<u>Transp.</u>, 120 N.J. 40, 49 (1990)). "They are the type of facts that go to a jury in a case tried before a jury." <u>Ibid.</u> (quoting <u>High Horizons</u>, 120 N.J. at 49–50).

In this case, neither side disputed before the Board what fume hoods were, how they were installed, whether the Carpenters had been doing so for decades, or that HVACR-licensed contractors were required to make the actual ventilation connections. Appellants' brief claims it was disputed whether fume hoods were included within the definition of HVACR. However, that is purely an interpretive question addressed to the Board's own regulations and the Act. The Legislature delegated that responsibility to the Board, which, in the first instance, had authority to decide whether installing a fume hood was essentially "the installation . . . of . . . ventilation and exhaust systems," and to do so without an evidentiary hearing. N.J.S.A. 45:16A-2.

## C.

Appellants argue the minutes of the Board's various meetings demonstrate it knowingly decided a jurisdictional dispute between two trades, and work jurisdiction disputes are preempted by the National Labor Relations Act (NLRA). We are not persuaded by the argument.

A jurisdictional dispute arises when "two or more groups of employees [compete] over which is entitled to do certain work for an employer." <u>NLRB v.</u>

Radio & Television Broad. Eng'rs Union, Local 1212, 364 U.S. 573, 579 (1961). A state agency's regulatory power is subject to the preemption principles of the NLRA. Chamber of Commerce of the U.S. v. Brown, 554 U.S. 60, 69–70 (2008). "States may not regulate activity that the NLRA protects, prohibits, or arguably protects or prohibits." Wis. Dep't of Indus., Labor & Human Relations v. Gould, Inc., 475 U.S. 282, 286 (1986) (citing San Diego Bldg. Trades Council v. Garmon, 35 U.S. 236, 244 (1959)).

However, we have previously considered decisions made by a State licensing board in the midst of a contested work jurisdiction dispute. For example, in In re Board of Examiners of Electrical Contractors, we reviewed the final decision of the Board of Examiners of Electrical Contractors, which "held that certain work performed by a contractor . . . on a New Jersey Turnpike project was not electrical work and therefore, required no permit from the Board and need not have been supervised by a Board[-]licensed electrical contractor." 356 N.J. Super. 42, 45 (App. Div. 2002). Although it is not apparent from our decision that NLRB preemption was raised as an issue, we recognized that the work involved, "a public rather than a private project, and thus, require[d] heightened sensitivity to jurisdictional disputes between labor unions." Id. at 54. We nevertheless affirmed the board's decision. Ibid.

A-2607-18T3

Here, the Board did not decide which group, the Sheet Metal Workers or the Carpenters, was "entitled to do certain work for an employer." Radio & Television Broad. Eng'rs Union, Local 1212, 364 U.S. at 579. We do not agree that the Board exceeded its authority by investigating and answering a complaint raised by appellants themselves as to the scope of the definition of HVACR and related licensure requirements.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2607-18T3