**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3793-23

MARK REED,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
STATE POLICE RETIREMENT
SYSTEM,

     Respondent-Respondent.

_____

Argued April 1, 2025 – Decided June 26, 2025

Before Judges Firko and Augostini.

On appeal from the Board of Trustees of the State Police Retirement System, Department of the Treasury, Docket No. SPRS No. xx5285.

Donald C. Barbati argued the cause for appellant (Crivelli, Barbati & DeRose, LLC, attorneys; Donald C. Barbati, on the briefs).

Matthew Melton, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Sookie Bae-Park, Assistant Attorney General, of counsel; Matthew Melton, on the brief).

PER CURIAM

Petitioner Mark Reed, a former State Trooper for the New Jersey State Police (NJSP), appeals from the final administrative decision of The Board of Trustees of the State Police Retirement System (the Board) denying his application for accidental disability retirement (ADR) benefits pursuant to N.J.S.A. 53:5A-10. On August 1, 2024, the Board adopted the initial decision and recommendation of the Administrative Law Judge (ALJ), who, after an evidentiary hearing, affirmed the Board's original denial of petitioner's application.

Petitioner was injured during an NJSP-approved vehicle extraction training on May 11, 2021. The Board awarded petitioner ordinary disability retirement benefits. However, the Board denied petitioner ADR benefits because the May 11, 2021 incident did not constitute a traumatic event under N.J.S.A. 53:5A-10.

The narrow issue on appeal is whether the Board erred in finding that the incident was not "undesigned and unexpected," and therefore, did not qualify as a traumatic event under the statute. Having reviewed the record and applicable law, we affirm.

A-3793-23

I.

We discern the undisputed facts from the administrative record. In 2004, the NJSP employed petitioner as a State Trooper, and he was enrolled in the State Police Retirement System (SPRS). Petitioner progressed to a Trooper I, having received awards and commendations during his career. At the time of the incident on May 11, 2021, petitioner was assigned as a general "Road Duty Trooper." During his career as a State Trooper, petitioner participated in "live" scenario trainings and simulations.

On May 10, 2021, at the end of his shift, petitioner was directed to report the next day to the Totowa State Police Headquarters for training along with Trooper Kyle Fanning, whom petitioner was mentoring. Petitioner was told that the training was a "martial arts jiu jitsu training for law enforcement."

On May 11, 2021, petitioner and Trooper Fanning arrived as directed for the vehicle extraction training. The trainees, including petitioner and Trooper Fanning, practiced several techniques that could be used to extract a combative occupant from a vehicle. Once comfortable with these techniques, the trainees were told "to go live" which meant to "go full force" to make the simulation seem "more of a real time scenario." During this "go live" scenario, petitioner sustained injuries to his neck and spine, which permanently disabled him.

A-3793-23

On March 1, 2022, petitioner applied for ADR benefits. On September 28, 2022, the Board determined that petitioner was totally and permanently disabled, his disability was a direct result of the May 11, 2021 incident, "which was identifiable as to time and place, occurred during and as a result of the performance of his regular or assigned job duties, and was not the result of his willful negligence." However, the Board found that the incident "was not undesigned and unexpected and [did] not qualify as a traumatic event" entitling petitioner to accidental disability retirement benefits. Petitioner appealed from the Board's denial and requested a hearing before an ALJ.

The ALJ conducted a hearing on March 20 and March 21, 2024. Petitioner testified as to the events of May 11, 2021, and called Lieutenant Freddy Araujo as a witness, who also attended the training on May 11, 2021, and was injured that day. The Board called as a witness Richard Ashkar, currently assistant unit head in the self-defense unit, who was the lead instructor for the May 11, 2021 training.

The parties stipulated to the following facts. Petitioner: (1) is totally and permanently disabled; (2) was awarded ordinary disability retirement benefits; (3) his disability was not the result of his willful negligence; and (4) his disability was identifiable as to time and place and a direct result of the incident.

4

On June 27, 2024, the ALJ issued an initial decision, and made the following findings based on the credible testimony of the three witnesses, focusing on whether the incident was "undesigned and unexpected":

1. The training on May 11, 2021, was an advanced training course.

2. Advanced training is given to enlisted members of the [NJSP].

3. The advanced training on May 11, 2021, included 100[%] grappling.

4. When the members are told to go "live", they should use 100[%] full strength to either stay in the vehicle or remove the combatant from the vehicle.

5. Going "live" in training can result in injury. However, members are taught to say "tap" or "end combat" when they deem it necessary.

Applying the correct legal standard as set forth in <u>Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys.</u>, 192 N.J. 189, 212-13 (2007), the ALJ concluded that the May 11, 2021 incident was "not undesigned and unexpected, and that [] petitioner ha[d] not met his burden of demonstrating that he me[t] the requirement[s] for accidental disability." The ALJ explained:

There is no doubt that petitioner was performing a routine part of his job when the incident occurred. Here, egos were in play. This was a controlled situation. The students or the safety officers were instructed to end the scenario at any time they deem it

5

necessary by saying "tap" or "end scenario." Lieutenant Araujo testified that he was injured, but he did not give 100% because he knew if he did, he would have hurt the other trooper that he was paired up with. However, [petitioner] recalled it was, "being in a fight like I'm trying to hurt him now and he is trying to hurt me. It was a struggle." [Petitioner] was the more senior trooper, and he or [T]rooper Fanning could have ended the scenario by saying "tap" or "end scenario." Neither did; instead, they struggled with each other. The young trooper may not have realized it, but [petitioner] should have known that an injury would occur because, as he testified, "I'm trying to hurt him, and he is trying to hurt me."

The ALJ concluded that the May 11, 2021 incident did not qualify as a traumatic event sustaining eligibility for ADR benefits, and therefore, affirmed the Board's determination denying petitioner's application.

Petitioner filed an administrative appeal to the Board, while the Board also filed exceptions to the ALJ's initial decision. On July 23, 2024, the Board reviewed the record and ALJ's decision and voted to adopt the ALJ's decision but made certain modifications to the ALJ's legal analysis.

On August 1, 2024, the Board issued its written decision adopting the ALJ's findings and conclusions with modifications to the ALJ's legal analysis. The Board explained "the ALJ correctly found the 2021 incident was not undesigned and unexpected on the basis that [petitioner] knowingly engaged in

6

a fight-like scenario with his partner, while having the option of "tapping" out but choosing not to."  The Board added:

> [T]he [B]oard ultimately determined that [petitioner] was participating in a training that was vetted and approved by the Office of Law Enforcement Professional Standards [(OLEPS)] through the standard approval process required for all New Jersey State Police trainings.  Vehicle extraction training continues to be taught today, and was not modified following the 2021 incident or since.  Therefore, the Board adopted the ALJ's determination there was nothing undesigned or unexpected about the 2021 incident, which occurred during a simulated training exercise that was being carried out to plan.

The Board adopted the ALJ's findings of fact and conclusions of law as modified.  This appeal followed.

On appeal, petitioner contends the Board's decision to adopt the ALJ's recommendation to deny petitioner ADR benefits was arbitrary, capricious, and unreasonable.  Petitioner further argues the finding that the May 11, 2021 incident was not "undesigned and unexpected" was erroneous.

## II.

Our review of an agency's determination is deferential and limited.  Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011).  "[M]indful of . . . the agency's expertise and superior knowledge of a particular field[,]" an appellate court "may not substitute its own judgment for the agency's, even

7

though the court might have reached a different result." Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 158 (2018) (first quoting Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 10 (2009); and then quoting In re Stallworth, 208 N.J. 182, 194 (2011)) (internal quotation marks omitted). We will not disturb an agency's decision "unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Mount v. Bd. of Trs., Police & Firemen's Ret. Sys., 233 N.J. 402, 418 (2018) (quoting Russo, 206 N.J. at 27).

However, an appellate court is not bound by an agency's legal determinations or statutory interpretation. Id. at 418-19. Thus, we review de novo the Board's interpretation of N.J.S.A. 53:5A-10 and relevant case law.

To qualify for ADR benefits, an employee must demonstrate he or she "is permanently and totally disabled . . . as a direct result of a traumatic event . . . occur[ing] during and as a result of the member's regular or assigned duties . . . ." Richardson, 192 N.J. at 212-13. ADR benefits "entitle[] a member to receive a higher level of benefits than those provided under an ordinary disability retirement." Thompson v. Bd. of Trs., Tchrs.' Pension & Annuity Fund, 449 N.J. Super. 478, 484 (App. Div. 2017) (quoting Patterson v. Bd. of Trs., State Police Ret. Sys., 194 N.J. 29, 43 (2008)). Under N.J.S.A. 53:5A-10,

an employee who is awarded an accidental disability pension received "a total retirement allowance of 2/3 of his [or her] final compensations." Whereas, under N.J.S.A. 53:5A-9, an employee who receives an ordinary disability retirement allowance receives "a total retirement allowance of 50% of final compensation plus 3% of final compensation multiplied by the number of years of creditable service over [twenty] but not over [twenty-five]."

To qualify for ADR, the employee must have experienced a traumatic event, which is defined as "an unexpected external happening that directly causes injury and is not the result of pre-existing disease alone or in combination with work effort." Richardson, 192 N.J. at 212. To receive ADR benefits, an employee must prove each of these five factors:

    1.  That he [or she] is permanently and totally disabled;

    2.  as a direct result of a traumatic event that is

        a. identifiable as to time and place,

        b. undesigned and unexpected, and

        c. caused by a circumstance external to the member (not the result of pre-existing disease that is aggravated or accelerated by the work);

    3.  that the traumatic event occurred during and as a result of the member's regular or assigned

duties;

4. that the disability was not the result of the member's willful negligence; and

5. that the member is mentally or physically incapacitated from performing his usual or any other duty.

[Mount, 233 N.J. at 421 (quoting Richardson, 192 N.J. at 212-13).]

"The polestar of the inquiry is whether, during the regular performance of his [or her] job, an unexpected happening, not the result of pre-existing disease alone or in combination with the work, has occurred and directly resulted in the permanent and total disability of the member." Richardson, 192 N.J. at 214. As the Supreme Court in Richardson noted, "some injuries sustained during ordinary work effort will pass muster and others will not." Ibid.

We begin by noting that the Board acknowledged petitioner met all the criteria except that the event was undesigned and unexpected. Petitioner contends the ALJ's determination that the May 11, 2021 incident was undesigned and unexpected should have been rejected by the Board because petitioner was unexpectedly required to engage in a live training scenario using full force, and the incident constituted an "unintended external event" which qualified as undesigned and unexpected. The Board counters that "there was

10

nothing undesigned and unexpected about the [May 11, 2021] incident which occurred during a simulated training exercise that was being carried out [according] to plan."

We reject petitioner's argument that the Board's conclusion was legally infirm, arbitrary, capricious and unreasonable for three reasons: (1) petitioner knowingly participated in the "fight-like" scenario involving grappling and resistance; (2) safety measures were incorporated to minimize potential risk of injury; and (3) the vehicle extraction training was approved by OLEPS. We conclude that the Board's final decision was supported by substantial credible evidence.

Petitioner acknowledged that he was aware that the training was "a martial arts jiu jitsu training," and the instructors described the training objectives that morning to the group as teaching them "new ways to extract combatant subjects out of the vehicle." Petitioner further described the training as involving "five instructors to two vehicles," and the thirteen participants were paired up taking "turns by sitting in the vehicle as the combatant and then the other person would play the trooper and then we would switch as we're doing these martial art moves."

11

Lieutenant Ashkar explained that the participants were shown the martial arts moves initially, practiced those moves several times at a "snail's pace in the beginning" without resistance, and "increase[d] speed only when comfortable with the movement." Ashkar further stated that during the live scenario, the participants were allowed to grapple but were prohibited from striking, spitting and biting when they were told "to go 100%." There was no evidence that any of the prohibited acts occurred or that Trooper Fanning used excessive force. As the ALJ pointed out, and the Board adopted, a struggle ensued. As petitioner recalled, it was like "being in a fight like I'm trying to hurt him now and he is trying to hurt me. It was a struggle."

According to Ashkar, nothing out of the ordinary occurred during the training exercise that day. The program was conducted according to the lesson plan and as it was described to the participants at the outset of the program. Petitioner acknowledged having prior trainings on how to deal with someone who is resisting and trainings involving "live scenarios" where one person is "playing against the bad guy . . . trying to [] subdue them."

As Ashkar acknowledged, there was a possibility of injury when teaching such techniques, and therefore, safety measures were in place. A safety briefing was held with the trainees at the start of the day. The instructors explained how

12

the training would be conducted and how the techniques would be practiced slowly and gradually with increasing speed. The instructors advised the trainees how to use the word "tap" to stop their partner from applying pressure and end the scenario. The instructors also inquired if any trainee had pre-existing conditions. The safety measures were followed. Petitioner did not elect to use the "tap" measure to end the simulation.

Finally, as Ashkar explained, this training was approved by OLEPS and then implemented by NJSP. OLEPS approved a new vehicle extraction training in 2016, and the training continues to be offered to date according to Ashkar. The lesson plan noted the objective of the vehicle extraction lesson is "to provide the [trainee] with the training and ability to apply vehicle extraction technique[s] along with the understanding necessary to subdue a resistor/suspect quickly and safely, while simultaneously limiting the possibility of injury to both the [t]rooper, and the resistor/suspect."

Petitioner contends the injuries he sustained during the training exercise were akin to the factual scenario discussed in Richardson, which qualified as an "undesigned and unexpected" event. The Court in Richardson determined that an incident involving a corrections officer who was injured when thrown to the ground while subduing an inmate was undesigned and unexpected, and

13

therefore, a traumatic event. However, unlike in <u>Richardson</u>, the resistance and force used during the training simulation was not unexpected or undesigned. Petitioner engaged in the simulation knowing what was expected of the participants, while he "hoped" Trooper Fanning would give him "a little bit of a break" during the live scenario. Moreover, the training was designed precisely to enhance the skills of law enforcement officers when confronted with "violent resistive and dangerous subjects . . . ."

In sum, having considered petitioner's arguments in light of the record and applicable legal standards, we affirm the Board's final agency decision denying petitioner's claim for ADR benefits. We are satisfied that sufficient credible evidence in the record supports the Board's adoption of the ALJ's determination that the May 11, 2021 incident was not undesigned and unexpected and that petitioner failed to meet his burden to prove he was entitled to ADR benefits. The Board's decision was not arbitrary, capricious or unreasonable, nor was it legally infirm.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

14